## SAMUEL FOYE *vs.* SEWALL SOUTHARD.

*Bailiff—what constitutes one.*

The plaintiff agreed to sell the defendant, a mariner, a quantity of unbranded pressed hay, which agreement was in contravention of the statute then in force (R. S., c. 38, § 35) upon that subject. After part of it had been put on board Captain Southard's vessel, a dispute arose between the parties as to whether certain bales hauled to the wharf were of the stipulated quality. The plaintiff then told the defendant that he must take the lot as a whole, or none of it, and then assumed to sell all his pressed hay to one Greenleaf, who took all of it, except thirty-two bales already laden on board Captain South-ard's schooner, which the captain was unwilling to land again. After some debate on this point, the plaintiff said to Southard: "You take what you have got, and go to hell with it." The defendant carried it to Boston, sold it, and after his return promised to pay Foye the proceeds less the freight, but afterward neglected and refused to do so. Foye brought an action of trover against Southard for the hay so carried to Boston, which was deter-mined in favor of the defendant. He then brought the present action of as-sumpsit, declaring in his first count for so much hay sold and delivered at the rate named in the original contract, and in the second for money had and received for the net proceeds of the hay sold after deducting expenses. Upon the last count the plaintiff obtained a verdict, which the court decides is not against law, nor so clearly contrary to the evidence as to require that it be set aside upon that ground; as it was competent for the jury to find upon these facts that the defendant carried the hay to Boston and there sold it as bailiff and agent of the plaintiff.

If the substance of a requested instruction, so far as it is material, is given, there is no ground for exception that it is not given in the language of the request.

The defendant requested to have the jury instructed, substantially, that if Mr. Foye sold to Greenleaf all the hay including that then on board of Captain Southard's vessel, and delivered all the rest of it, he could not recover in this action;—which instruction was refused, the judge ruling that, as the hay was not hauled, the sale would be void, and that Greenleaf would obtain no rights under it, either as against Foye or Southard, and therefore that such sale could not be set up by the latter in defence to this claim: *held,* that this ruling was in accordance with law.

ON EXCEPTIONS AND MOTION FOR A NEW TRIAL.

ASSUMPSIT, commenced the twenty-fifth day of October, 1862. A nonsuit had been ordered in this case at its first trial, in 1866,

which the full court decided to be improper; and that if his evidence was not rebutted, the plaintiff could recover upon the facts proved by him. *Foye* v. *Southard*, 54 Maine, 147.

The declaration contained two counts. The first was upon an account annexed "for 9759 lbs. of hay taken from Whaleship wharf in Wiscasset and carried to Boston and sold for twenty-three dollars a ton,                                                            $112.22,
and for interest thereon                                                          17.73
                                                                                  ———————
                                                                                  $129.95"

with a credit of $9.75 for freight.

The bill was dated May 22, 1860, when the transaction took place.

The second count was for money had and received, with this specification: "For balance of money and interest thereon received for the hay sold in Boston."

In May, 1860, this hay was baled but not branded, and, in that condition, was in the plaintiff's barn, when the defendant,—who then had command of the coasting schooner Coquette, lying at Whaleship wharf in Wiscasset, and who desired to purchase enough pressed hay to finish out a deck-load for his vessel,— went up to see it. Terms of purchase were agreed upon, $17 for the superior and $14 for the inferior quality. The hay was to be delivered along side of the schooner. Several loads were hauled to the wharf, with the first four or five of which no fault was found; but with some of the later loads Captain Southard was dissatisfied, saying it was not such as he purchased and he would not take it. Mr. Foye told him he must take the whole lot or none. Finally, a Mr. Greenleaf, who was called to examine the hay, and pass upon its quality, declared it to be a good average lot, and that he would take it if Southard would not. Thereupon Foye said he sold the whole lot, including that already on board the Coquette, to Greenleaf. The defendant's version of this part of the transaction, and the conversation relative thereto was this: "The third time he came, there were five or six bales of the poor hay and I told him that would not do, and he said he would take

off what I wanted, and Greenleaf would take the rest. We put that on again, and when he came again he drove up to Mr. Greenleaf's store-house. I asked him what that meant. He said I should not have it in that way. I told him I did not buy damaged hay. He said I should not have any of it, unless I took the whole. I told him again I did not buy damaged hay. The reply he made was : 'You take what you have got, and go to hell with it.' I did not know the way to hell, and so I went to Boston with it." He was then asked whether he carried the hay to sell for Foye, or whether it was sold to him, and whether or not Foye ever demanded a re-delivery of it, and replied, "It was sold to me," and that no re-delivery was ever asked for, adding: "When I got back from Boston, I met Foye at Stacy's corner. I said if you will stop a few moments, I will pay you for that hay; and he said, 'what in hell did you go off, and not pay me for ?' I said, Mr. Foye, I never saw you; you did not present any bill, but if you will stop here five minutes till I go to the house to get the money, I will settle with you.' I went to the house and got my papers and came right back. I was not gone over five minutes. I hunted all over town for him. I was in a hurry to go up the river. There was a fair wind. I went up to Mr. Elmes' shop, and left the money with him," &c., &c.

June 1, 1860, the plaintiff brought trover against the defendant for the conversion of the same hay that is mentioned in the account annexed to the writ in the present action. This trover suit was referred and the referees reported in favor of the defendant on the ground of the sale to him, which prevented the taking from being tortious, and judgment was entered upon the report, on the second Tuesday of January, 1862.

The defendant requested the judge to give these instructions to the jury :

"I. That if the hay was sold by the plaintiff to the defendant in the market, for shipping, without being branded with the first letter of the christian and the whole of the surname of the person putting up the same, with the name and state where such person

lives, the sale was in violation of law, and the plaintiff cannot recover the price agreed to be paid.

II. That if the hay was so sold by the plaintiff to the defendant, and delivered to the defendant the title passed to the defendant; and if the defendant sold the hay in Boston and afterwards promised the plaintiff to pay him without any new consideration, such promise is void, and no action can be maintained for the price of the hay.

III. That if the plaintiff rescinded the contract of sale to the defendant on the ground that he would not accept the whole of the hay, so that the title did not pass to the defendant, and there-. upon sold the whole lot, including the portion hauled to the defendant, to Mr. Greenleaf, for a price agreed upon by the parties, and agreed to deliver the hay to him, and did deliver to said Greenleaf, on that day, a portion of the lot of hay under the contract, the title to the whole, including the portion hauled to the defendant would pass to Greenleaf, and the plaintiff cannot maintain this action for the hay or the money received by the defendant for it.

The first request was given.   The other requests were not given, except as modified in the charge.   The presiding judge instructed the jury as follows :

"By the statute of this state all hay pressed and put up for sale in this state is required to be branded upon the boards or bands which contain it, with the first letter of the christian name and the whole surname of the person who puts it up, together with the name of the state and the town where the party resides.   And if any such hay, not thus branded, is offered for sale, or shipping, it is liable to forfeiture, and may be forfeited, one-half going to the party complaining and the other half to the benefit of the town where the transaction takes place.   And if any shipmaster shall take on board any pressed hay not thus branded, he shall be liable to a penalty of two dollars for every such bundle taken on board his vessel for that purpose.

"The plaintiff brings this action for the purpose of recovering

compensation for a certain amount of hay which he delivered to the defendant, many years ago. His action contains two counts: the first is a count on an account annexed to the writ, and the next is a count for money had and received by the defendant for the benefit of the plaintiff. Although some suggestion was made at the opening of the plaintiff's case in regard to the first count in the writ, I understand that now upon looking the whole matter over, the plaintiff expects you to consider whether or not under the rule of law applicable to the case, he is entitled to recover upon that count in the writ; and whether entitled to recover under that count or not, he claims that he is entitled to recover upon the second count.

"There is no question between these parties but that the defendant did receive a quantity of hay from the plaintiff, whether there was a contract for sale or otherwise. And there is no question that the hay thus delivered was pressed hay and not branded. The question arises as to the effect of any contract for sale, the parties may have made : Is it one that can be enforced by the courts of this state ? This sale is an illegal one, if such one was made, and being illegal in its character, will the courts in this state, established and ordained for the purpose of executing the laws, lend its aid in violation of those very laws? The simple inquiry suggests an answer in the negative. The courts will not aid parties in enforcing contracts when made in plain violation of the law of the land. This statute was passed, undoubtedly, from motives of public policy, for the protection of honest purchasers ; to enable the purchaser of an article which did not prove to be what it appeared to be, to trace the hay back to the guilty party, and to enable him to punish such party.

"Now, I have to say to you gentlemen, that if these parties entered into a contract, the plaintiff to sell, and the defendant to buy this hay, unbranded, that that was a contract made in violation of the law and the law will not aid either party in enforcing it, and that the plaintiff, if such was the contract between the parties, cannot recover from the defendant for the price under the first count

in the writ. Can he recover under the second count? I propose principally to direct your attention to the principles of law, without recapitulating the testimony or any considerable portion of it before you. You will undoubtedly recollect all that is material in the case. There has been some testimony tending to show, or by which, it is claimed by one side, or perhaps both sides, that this pretended contract was rescinded by the plaintiff in consequence of a refusal by the defendant to receive certain objectionable bundles, as not conforming to the quality which he had agreed to deliver. It is claimed by the counsel for the defendant that if this was done by the plaintiff—that if he then and there stated that if he did not take the whole of the hay as it was, it being precisely the quality stipulated for, that he should not have any of it, that the contract was up, and that he did then and there negotiate with one Greenleaf and did sell all to him, delivering a portion to him, that then the plaintiff parted with the property to Greenleaf, and having parted with his interest in the property to Greenleaf, he cannot maintain this action against the defendant. Now, gentlemen, how was this, and what is the rule of law applicable to such cases? The original contract, if a contract was made, between the plaintiff and the defendant, was an illegal one and conferred no right of property in the hay not delivered, upon the defendant—no right that he could enforce at law. If, for instance, the parties had entered into this contract and a part was delivered to the defendant and a part remained in the plaintiff's possession, think you that if the plaintiff refused to deliver the balance, the law could compel him to deliver it? Certainly not. So that if the illegitimate contract was undertaken on the part of the plaintiff to be rescinded by him, the advantage that he undertook to confer upon Greenleaf would confer no greater rights than he had conferred upon the defendant. The contract with Greenleaf would be equally illegal, and therefore I do not give you the instruction requested by the defendant.

"Now it is claimed further, on the part of the counsel for the plaintiff, that this hay, whatever may have been the original contract or arrangements between these parties, actually went into

the possession of the defendant with the plaintiff's consent and knowledge, after the rescission of the contract and that it was taken to Boston by him, with the consent and knowledge of the plaintiff, and that having been thus taken, and having been sold by him in Boston, and having upon his return to Wiscasset promised the plaintiff that he would pay him the amount that he had received for the sale of the hay, deducting the freight; and therefore from this circumstance the plaintiff is entitled to recover upon the second count in the writ. In other words, that the defendant now has money in his possession which, in equity and good conscience belongs to the plaintiff, and that he is bound to pay over the money to the plaintiff. Now, gentlemen, how was that? I instruct you that if this hay did thus go into the possession of the defendant, with the consent of the plaintiff, and did leave Wiscasset in the defendant's vessel with the plaintiff's knowledge and consent, and the defendant did take it to Boston, and did sell it and come home, and promised to pay the proceeds to the plaintiff—deducting the freight, that the plaintiff is entitled to recover the amount of the sales of the hay, deducting the amount of the freight. So it will be important for you to consider the taking of the hay with respect to the knowledge and consent of this plaintiff, and whether upon his return he offered to pay the amount to the plaintiff, deducting the amount of the freight. For if he did, then I instruct you that the plaintiff is entitled to recover.

"But if the defendant took the hay without the consent of the plaintiff, if he took it tortiously, and took it to Boston, and there sold it, and then came home and offered to pay the plaintiff the amount of the proceeds, that he would not be entitled to maintain this action, for the reason the question of tortious taking has been once solemnly adjudicated between the parties, and it is not competent to have that matter adjudicated upon again.

"These are the principles of law, as I understand, which are involved in this case; and it is for you to apply the testimony upon these principles."

The verdict was for the plaintiff, and to the foregoing instructions and refusals to instruct, the defendant excepted.

*A. Libbey* for the defendant.

The plaintiff cannot recover on the contract of sale, because the hay was not branded; on this point the charge of the presiding judge is correct. *Foye* v. *Southard*, 54 Maine, 147; *Buxton* v. *Hamblen*, 32 Maine, 448.

The second and third requested instructions should have been given.

By the sale to Greenleaf of the whole of the plaintiff's hay, including what he had hauled to the defendant, and a delivery of part, the title to the whole, as between the parties, passed to Greenleaf. A sale by the owner of property in the hands of one wrongfully holding it, will pass the title to purchaser without delivery, and the purchaser may maintain trover for it. *Lanfear* v. *Sumner*, 17 Mass., 110; *Parsons* v. *Dickinson*, 11 Pick., 352.

The title to property sold on the Lord's day, passes to the purchaser. *Richardson* v. *Kimball*, 28 Maine, 463; *Myers* v. *Meinrath*, 101 Mass., 366.

The plaintiff never rescinded the contract of sale with Greenleaf, and if the defendant did not purchase the hay of Foye, he is liable in trover to Greenleaf.

The instruction "that if this hay did thus go into the possession of the defendant, with the consent of the plaintiff, and did leave Wiscasset in defendant's vessel with plaintiff's knowledge and consent, and the defendant did take it to Boston, and did sell it and come home, and promised to pay the proceeds to the plaintiff, deducting the freight, then the plaintiff is entitled to recover the amount of sales of the hay deducting the amount of freight," as applied to the evidence in the case, is erroneous. Though correct as an abstract proposition there was no evidence in the case to authorize it. *Hopkins* v. *Fowler*, 39 Maine, 568; *Wright* v. *Old Colony R. R. Co.*, 9 Gray, 413.

The verdict is clearly against the evidence. If it was a sale, the plaintiff cannot recover. If a conversion, he cannot recover, for he brought his suit for that cause, and defendant recovered judgment against him.

There is no evidence that the defendant took the hay of the plaintiff to carry to Boston and sell for him, on freight. The plaintiff's own evidence and that of his brother also, is against it. The plaintiff says he sold all the hay to Greenleaf.

The averment in the plaintiff's first writ that the defendant wrongfully took and converted the hay, is evidence he did not take it by plaintiff's request, to sell for him.

Having once elected to rely upon a tort, he cannot now waive it and bring assumpsit. *Ware* v. *Percival*, 61 Maine, 391.

*A. P. Gould* and *J. E. Moore* for the plaintiff.

Virgin, J. In the first count, the plaintiff seeks to recover the price of a certain quantity of hay, as for goods sold and delivered.

In the second count is set forth the claim of the plaintiff to recover, not the price agreed upon as part of a contract of sale, but the proceeds of the same hay received by the defendant and alleged rightfully to belong to the plaintiff, less certain charges for freight, but never accounted for or paid over to him by the defendant.

In the spring of 1860, (the date of the transactions to which the allegations refer,) the plaintiff, a farmer residing in Wiscasset, owned certain bales of pressed hay, not branded in conformity with the requirements of R. S. of 1857, c. 38, § 35. The defendant was master of a coasting vessel lying at one of the wharves in Wiscasset, and about to sail to Boston.

After an examination of the hay as it was stored in the plaintiff's barn, and some negotiations between the parties, a contract of sale was made, the price agreed upon and a day fixed for the delivery at the wharf.

When a portion had been delivered on board in pursuance of such contract of sale, a dispute arose as to the quality of the hay; the defendant refused to receive certain bales which he claimed were inferior in quality and value to those shown to him at the barn ; and the plaintiff insisting that it was the same hay examined, declared that it should not be picked, that unless the defendant took the whole lot at the rates originally agreed upon, he should have none of it.

Thereupon the plaintiff ceased hauling hay to the defendant's vessel—made a new sale to one Greenleaf, to whom he delivered all that had not been put on board of the defendant's vessel, or deposited at the wharf ready for delivery on board. There is evidence tending to show that this new contract of sale to Greenleaf included in terms the entire lot—that already in possession of the defendant as well as the part which had never been delivered to him.

The report of the evidence discloses at length the conversation between the parties pertaining to this transaction. It need not be repeated, but will be important to be considered in its bearing upon the question whether, notwithstanding the alleged sale to Greenleaf, consent was finally given by the plaintiff to the defendant's retaining the hay delivered to him and proceeding with it to Boston.

The defendant sailed soon after for Boston, where he sold the hay, received the proceeds and on his return promised the plaintiff to pay him; but has never done so.

As to the amount of the verdict, if under the rules of law stated by the presiding justice, the jury should find for the plaintiff, they were directed that they might "return the amount received by the defendant for the sale of the hay, deducting for his freight and all reasonable charges, and add to that interest from the date of the writ."

The verdict was for the plaintiff, and the case comes before this court on exceptions and motion to set aside the verdict as against evidence.

The first requested instruction was given; and as it was conceded at the trial that the hay was not branded, that was equivalent to a ruling that the plaintiff was not entitled to recover under the first count. The charge also contained other definite instructions to the same effect.

The first exception, therefore, has reference to the refusal of the presiding judge to give the second instruction requested by the defendant. But upon review of the charge, we are satisfied that while the language of this request was not adopted, its substance,

so far as material to the issue was clearly embraced in the rulings given.

Upon facts not in dispute, the jury were instructed that the plaintiff could not recover under the first count; and his right to recover under the second count was made by the rulings given, to depend upon their finding that the original contract of sale was rescinded by the parties, prior to the defendant's sailing to Boston. If such rescission was not proved, then by the instructions contained in the charge, the plaintiff was not entitled to recover. If there was such rescission, the second request predecated as it is upon a subsisting sale became inapplicable.

The defendant secondly excepts to the refusal to give the third requested instruction and to those rulings which were given upon the matters embraced therein.

But we think it clear upon principle and authority that an agreement to sell to Greenleaf the unbranded hay which was in the possession of the defendant, being in direct violation of the statute, and it not having been executed on either side by payment or delivery, conferred no title upon Greenleaf which the law would protect. Whatever form of remedy he should elect, whatever process he should adopt to sustain such title—whether to enforce delivery according to the terms of the illegal contract, or to recover damages for breach thereof, the maxim—"*Potior est conditio defendentis*" would apply. The sole claim which Greenleaf could urge against the plaintiff, so far as the hay which remained in the possession of the defendant is concerned, would be based wholly upon an unexecuted contract, forbidden by statute. If the plaintiff delivered to him only a part of what he had agreed to deliver, Greenleaf could have accepted it or rejected it and refused to pay; and if he adopted the latter course, the failure to deliver the whole as well as the illegality of the contract would have afforded ample defence to Greenleaf in any proceeding by the plaintiff against him. But if he chose to accept a part of what had been illegally agreed to be sold and delivered to him, he thereby acquired no title to the portion not delivered and not paid for.

These considerations apply as well to any proceedings by Greenleaf against the defendant as against the plaintiff. For unless the verdict is against the evidence—which we shall consider later—the defendant can only be regarded as the bailee of the plaintiff with reference to the hay which forms the subject matter of this suit. Under the instructions given, the jury must have found that the defendant was not a vendee under an illegal sale; for they were told in effect that the plaintiff was not entitled to recover in such case.

The verdict also negatives the theory that the defendant was a trespasser or wrongdoer in his conduct relating to the hay. For it appearing that a previous action of trover for the same hay had been determined in favor of the defendant, the jury were instructed that—"If the defendant took the hay without the consent of the plaintiff, if he took it tortiously to Boston and there sold it, and then came home and offered to pay the plaintiff the amount of the proceeds, the plaintiff would not be entitled to maintain this action for the reason that the tortious taking has once been solemnly adjudicated between the parties," &c.

Under the verdict, then, the defendant was neither vendee nor trespasser. He was bailee of the plaintiff; and the same considerations which would forbid Greenleaf to assert title against the plaintiff or claim damage of him, would apply with equal force to any claim made by Greenleaf upon the defendant, in regard to this hay. No title in Greenleaf then intervenes to prevent the plaintiff from maintaining this suit; and the refusal to give the second request, as well as the instructions given on this subject were correct.

The remaining exception is to the following ruling : "If this hay did thus go into the possession of the defendant with the plaintiff's consent and did leave Wiscasset in the defendant's vessel with the plaintiff's knowledge and consent, and the defendant did take it to Boston and sell it, and came home and promised to pay the proceeds to the plaintiff, deducting the freight, the plaintiff is entitled to recover."

This is conceded to be correct as an abstract proposition, but it is claimed that there is no evidence on which to base it.

The consideration of this exception therefore is closely connected with that of the motion to set aside the verdict as being against evidence.

It is contended that the instruction assumes one fact which the jury were not authorized to find from the evidence—to wit—the plaintiff's consent to the defendant's act in taking and removing the hay to Boston.

Were the jury justified in finding such assent? Or is the verdict on this point so clearly opposed to the evidence as to require the interference of this court to correct an error of fact?

There is undoubtedly testimony strongly tending to show that the plaintiff did not assent to such action on the part of the defendant; but it can by no means be said upon the evidence reported to be a matter about which there is not a real controversy.

The plaintiff at one time said that unless the defendant took the whole of the hay, he should have none. But there is also testimony tending to show that the hay immediately upon its delivery at the wharf was put on board the vessel in the plaintiff's presence; and it appears that the plaintiff never demanded the possession of it again, nor forbade the defendant to sail with it; but on the contrary told the defendant—"you take what you have got and go to hell with it"—which the defendant might construe into a permission to take what hay was already on board and go wherever he pleased with it.

The plaintiff says he sold the whole lot to Greenleaf, including what had been delivered to the defendant; and the first action brought by the plaintiff was trover alleging conversion. Both of these facts are strongly opposed to any theory of consent on the part of the plaintiff to the taking of the hay by the defendant.

But in determining the question whether the taking by the defendant was tortious in such sense as that judgment in favor of the defendant in the action of trover should bar this action, regard should be had not so much to what were the real wish and intent of the plaintiff as to what was the manifestation of his will by word and act in his dealing with the defendant.

Foye v. Southard.

Were his language and conduct, or his silence and failure to act, such as reasonably to give the defendant to understand that he might retain and remove to Boston the hay which had been put on board his vessel, accounting therefor on his return? If so, the defendant was guilty of no tort, and the judgment in trover should not bar this action.

The interview between the parties on the return of the defendant from Boston, as detailed by both, tends strongly to show that the plaintiff did not complain of the defendant for proceeding to Boston with the hay, that he charged him with no wrong except the non-payment of the money. Whether the court might or might not arrive at a different result upon the same evidence, we are satisfied that no such manifest error in the action of the jury is shown as requires us to grant this motion and re-open this long pending controversy.

And if on this point the verdict is not unwarranted by the evidence, the last instruction to which exception is taken, admitted to be correct in the abstract, becomes pertinent to the facts in controversy.

A somewhat peculiar state of facts is developed by the testimony reported. It is not a question of the legal relation existing between parties to a contract made in violation of law. It was only upon proof of the rescission of the contract of sale, the taking of the hay by the plaintiff's consent, the receipt of the proceeds by the defendant upon sale thereof in another state, and a subsequent promise made on his return to pay, that under the rulings given the defendant became liable.

Without attempting to determine what would have been the legal rights of the parties had no rescission been proved, we regard the instructions to which exceptions have been taken as free from any error by which the defendant has been prejudiced.

*Motion and exceptions overruled.*

APPLETON, C. J., DICKERSON, DANFORTH and PETERS, JJ., concurred.