STATE *vs*. CHARLES H. WITHAM.

Cumberland. Opinion August 22, 1881.

*Indictment. Adultery. Evidence. Stat. 1879, c. 92, § 2.*

A defendant, in a criminal prosecution, testifying in his own behalf, may be cross-examined in full, in the same manner and to the same extent that any other witness could be.

He is not to be protected against cross-examination because his answers may implicate him in other criminalities besides the offence with which he is charged, if the connection is such that the proof is relevant to the issue.

The statute of 1879, which provides that he shall not be compelled to testify on cross-examination to facts which would convict him of any other crime than that for which he is on trial, only excludes compulsory admission of independent and extraneous offences, evidence of which is offered merely to affect character or credibility.

The cross-examination of a defendant, legally obtained in one criminal prosecution, is admissible as evidence in another criminal prosecution against him, if pertinent to the issue.

It is not error, under an indictment for a single act of adultery, to omit to specify some particular act as the offence to be proved, where several acts are testified to between the same parties, neither side asking for such specification.

In a prosecution for adultery, acts prior and also subsequent to the act charged in the indictment, when indicating a continuousness of illicit intercourse, are admissible in evidence for the purpose of showing the relation and mutual disposition of the parties, the reception of such evidence to be largely controlled by the judge who tries the cause, explaining to the jury its purpose and effect.

It is a general rule of practice in this State that, when one side without objection introduces evidence irrelevant to the issue, which is prejudicial and harmful to the other side, the other party is entitled to introduce evidence that goes directly and strictly to contradict and disprove it.

On the trial of the defendant for adultery with Miss Small, a government witness testified that frequently in the summer and fall, between eight and nine in the evening, she saw the defendant go to Miss Small's house, call her out, talk with her at the gate, and once walk to the ship-yard with her. The defendant denied this, and offered to show by another witness that, during the same summer and fall, in the evening, such other witness had several times seen a man, not the defendant, call Miss Small out and stand with her at the gate, and walk to the ship-yard with her; *Held*, that the testimony offered was admissible upon the question of the identity of the defendant with the person described by the first witness.

ON EXCEPTIONS from superior court.

Indictment for adultery with Annie Susan Small, July 18, 1878, at Cape Elizabeth.

72 531
73 343
76 481
82 515

The questions presented by the exceptions and the facts material to their consideration are fully stated in the opinion.

*T. H. Haskell,* county attorney, for the State, cited : *State* v. *Gilman,* 51 Maine, 206 ; *Com.* v. *Reynolds,* 122 Mass. 454 ; *Com.* v. *Nichols,* 114 Mass. 285 ; *State* v. *Wentworth,* 65 Maine, 234 ; *Andrews* v. *Frye,* 104 Mass. 234 ; *State* v. *Cleaves,* 59 Maine, 298 ; 2 Greenl. Ev. § 40 ; *Com.* v. *Cobb,* 14 Gray, 57 ; *Thayer* v. *Thayer,* 101 Mass. 111 ; *Com.* v. *Merriam,* 14 Pick. 518 ; *Com.* v. *Tuckerman,* 10 Gray, 200 ; *Com.* v. *Lahey,* 14 Gray, 91.

The questions asked the respondent's witnesses and excluded, were inadmissible because they were either leading, immaterial or related to the conduct of Miss Small in a collateral matter concerning which she was not interrogated in chief, and which she denied on cross examination and thereby precluded the defendant from contradicting her. *State* v. *Benner,* 64 Maine, 267.

In this case the paternity of the child was not in question, and even in a trial under the bastardy act where that is the issue, proof that the complainant had sexual intercourse with other men at a time other than when the child could have been begotten, for the purpose of contradicting her testimony in chief that she had not had sexual intercourse with other men, is inadmissible. *Parker* v. *Dudley,* 118 Mass. 602.

Nor can she be discredited as a witness by proof of such facts, or that her character is bad for chastity. *Sabines* v. *Jones,* 119 Mass. 167 ; *Sidelinger* v. *Bucklin,* 64 Maine, 371 ; *Eddy* v. *Gray,* 4 Allen, 435 ; *Com.* v. *Moore,* 3 Pick. 194 ; *Paull* v. *Padelford,* 16 Gray, 263.

*Alden J. Blethen* and *Sewall C. Strout,* for the defendant, cited : 1 Greenl. Ev. § § 451, 379, 380 ; *People* v. *McMahon,* 1 Smith, (N. Y.) 384 ; *State* v. *Gilman,* 51 Maine, 222 ; Const. U. S. Amendments, Art 5 ; Const. Maine, Art 1, § 6 ; *Gilham's Case,* 1 Moo. C. C. 203 ; Roscoe Crim. Ev. 48, 49 ; Stat. 1879, c. 92, § 2 ; *State* v. *Wentworth,* 65 Maine, 239 ; Bishop Stat. Crimes, § 684 ; *Blackman* v. *The State,* 36 Ala. 295 ; *Com.* v.

*Pierce*, 11 Gray, 448; *Com.* v. *Merriam*, 14 Pick. 518; 14 Gray, 91; 2 Gray, 335; 2 Greenl. Ev. § 47; 100 Mass. 145.

PETERS, J. Upon an indictment for the murder of an illegitimate infant, the respondent was tried and acquitted. In the present case, he was on trial for adultery alleged to have been committed with the mother of the infant. In the former case, he was a witness in his own behalf, and was cross-examined by the government with a view of eliciting admissions tending to show that the paternity of the child was his. Most of the questions put by the government in the former case he refused to answer, claiming it to be his privilege to avoid interrogation as to his participation in any crime or offence for which he was not then on trial.

Was the cross-examination in that case admissible in this case, subject to respondent's objection? That depends upon whether it is to be regarded as voluntary instead of compulsory testimony, and whether it was lawfully or unlawfully obtained. In our opinion, the entire examination of the respondent in the former trial must, in a judicial sense at least, be considered as voluntary testimony and legally obtained. When the accused volunteers to testify in his own behalf at all, upon the issue whether the alleged crime has been committed or not, he volunteers to testify in full. His oath in such case requires it. If he waives the constitutional privilege at all, he waives it all. He cannot retire under shelter when danger comes. The door opened by him is shut against retreat. The object of all examinations is to elicit the whole truth and not a part of it. Under our rule, the cross-examination of a witness is not confined to the matters inquired of in chief. A party, testifying as his own witness, can be examined just as any other witness could be in any respect material and relevant to the issue. To some extent, more may be elicited from him than from a common witness, because his statements are admissions as well as testimony. Any other construction would render the statute a shield to crime and criminals. *State* v. *Wentworth*, 65 Maine, 234; *State* v. *Ober*, 52 N. H. 459; *Com.* v. *Nichols*, 114 Mass. 285; *Com.* v. *Reynolds*, 122 Mass. 454; *Connors* v. *People*, 50 N. Y. 240; *Stover* v. *People*,

56 N. Y. 315; 1 Greenl. Ev. § 451, (13th ed.) and cases in note. Whar. Crim. Ev. (8th ed.) § § 470, 669, and notes.

So far as the respondent refused to answer proper and competent questions, the refusal was evidence from which the jury could draw unfavorable inferences against him. *Andrews* v. *Frye*, 104 Mass. 234; Whar. Ev. § § 533, 546, 1266.

It is no objection that, in attempting to prove one offence by the respondent's answers, another offence is proved or confessed by him, if the connection is such that the proof is relevant to the issue. That is unavoidable. If a person accused of crime takes the benefit of his own swearing, he takes its risks. It was relevant to the issue in the trial for the homicide to show the respondent to be the father of the illegitimate child, as indicating motive for the commission of the crime charged against him. *Com.* v. *Call*, 21 Pick. 515; Whar. Crim. Ev. (8th ed.) § 29, *et seq.* and numerous cases cited in notes.

The statute of 1879, relied on by respondent, does not change the case. It is in these words: "The defendant in a criminal prosecution who testifies in his own behalf, shall not be compelled to testify on cross-examination to facts that would convict, or furnish evidence to convict, him of any other crime than that for which he is on trial." This does not alter the law as it stood in this State before the enactment. It does not provide that evidence legally obtained at one trial may not be used in another trial. It merely declares the rule already adopted in this State, in the case of *State* v. *Carson*, 66 Maine, 116, where it was held that a prisoner, who testifies in his own behalf, should not be compelled upon cross-examination to disclose his guilt in any other crime or offence, the evidence of which was not necessarily involved in the proof of the offence for which he was on trial; that a defendant in a criminal prosecution could not be compelled, while a witness, to confess independent and extraneous offences, merely to affect character or credibility. The statute is in accord with the decision. Neither excludes evidence which charges or confesses extraneous criminalities, the evidence of which from circumstances becomes relevant and material to the main question in issue.

The respondent stood indicted for a single act of adultery; while his paramour was allowed to testify to several acts as having taken place at several times and under different circumstances. Complaint is made that the prosecution was not required to specify some particular act as the offence to be proved under the indictment. It was not a legal error to omit to do so, so long as no specification was by any party asked for.

It is objected that this mode of trial involved the admission of evidence of acts of adultery happening both before and after the principal act complained of. Formerly, the criticism might have been regarded favorably in many courts. Latterly, however, courts and text-writers are rapidly falling in with the view, that acts prior and also subsequent to the act charged in the indictment, when indicating a continuousness of illicit intercourse, are admissible in evidence as showing the relation and mutual disposition of the parties; the reception of such evidence to be largely controlled by the judge who tries the cause, and the evidence to be submitted to the jury with proper explanation of its purpose and effect. We think this doctrine is most in accordance with the logic of the law and with the authorities. The same rule applies where intent, or system, or scienter, may be involved, as illustrated in successive cheats or forgeries, or passing counterfeit money to different persons, and the like; the doctrine concerning which classes of crime may be found elaborately illustrated and supported in the text, and cases cited, in Whar. Crim. Ev. (8th ed.) in section thirty-one, and sections following, and in 1 Greenl. Ev. (13th ed.) § § 53, 451, 454, and notes thereto. *State* v. *Bridgman,* 49 Vt. 202; *Thayer* v. *Thayer,* 101 Mass. 111; *Com.* v. *Nichols,* 114 Mass. 285; Whar. Crim. Law, 8th ed. § 1733; Bishop Stat. Crimes, § 682; 2 Bishop Mar. & Div. 6th ed. § 625, and cases in note.

Annie Small, the female implicated, testified to sexual intercourse with the respondent in July, 1878, and to the birth of a child by her nine months afterwards. The latter fact was inadmissible. *Com.* v. *Foster,* 107 Mass. 221. But it was not objected to. To rebut an unfavorable inference from this evidence, the respondent offered testimony tending to show that some one other than

himself was the father. This was excluded. The introduction of immaterial testimony to meet immaterial testimony on the other side, is generally within the discretion of the presiding judge. But if one side introduces evidence irrelevant to the issue, which is prejudicial and harmful to the other party, then, although it come in without objection, the other party is entitled to introduce evidence which will directly and strictly contradict it. Thus, in this case the respondent would have been authorized to prove, if he could, that a child was not born at all, or was not born at the time testified to by the paramour. The government waives the strict rule of law to this extent, by its misstep of introducing illegal evidence, and the respondent is entitled to no more relaxation of the common rule, because he could by his objection have excluded the illegal or irregular evidence. The ruling, therefore, was not erroneous. *State* v. *Sargent*, 32 Maine, 431 : *Williams* v. *Gilman*, 71 Maine, 21 ; *Mowry* v. *Smith*, 9 Allen, 67 ; *Parker* v. *Dudley*, 118 Mass. at p. 605, and cases.

But other evidence was offered and excluded which should have been admitted. A Mrs. Tucker, a government witness, testified that frequently, in the summer and fall of 1878, between eight and nine o'clock in the evening, she saw the respondent go to the house where Miss Small (the alleged paramour) lived, and call her out, and stand and talk with her at the gate, and that once they walked towards the ship yard together — her own house being about ninety feet from Miss Small's house. This was pertinent testimony.

The respondent denied it to be true, and, in order to corroborate his own statement and discredit the statement of the government witness, by showing that she was mistaken in the identity of the person whom she saw, called another witness, who lived nearer Miss Small than the government witness did, and offered to show by such witness, that, during the same summer and fall, in the evening, she had several times seen a man, not the respondent, call Miss Small out and stand with her at the gate, and walk to the ship yard with her. This was excluded. It should have been admitted.

The question is whether it was relevant or not. It was relevant if it had any tendency, however slight, to show that the government witness was mistaken, or testified falsely, as to the identity of the person of the accused. Of course, both statements might be true. Still, it cannot reasonably be said that the truth of the one would not lessen the probability of the truth of the other. It would, certainly, be an uncommon occurrence for two persons to be upon the same ground, at the same hours of the day, covering the same period of time, to see the same person, acting in the same peculiar manner, making the same movement to the ship yard, and making such a call in such a manner as a frequent and habitual thing. There is not complete definiteness in the contradictory statement, nor is there in the story to be contradicted. Bearing in mind that, as the case comes to us, the respondent denies the identity; that the principal government witness, who knows whether it be true or false, has not affirmed it; that Mrs. Tucker does not say that she ever saw any man other than the respondent at the place and in the situation described by her, and it would seem that the rejected testimony, if true, must bear with considerable force against one of the positions of attack relied on by the government.

"Relevancy is that which conduces to the proof of a pertinent hypothesis. Hence it is relevant to put in evidence any circumstances which tend to make the proposition at issue more or less improbable." Whar. Ev. §§ 20, 21. In *Trull* v. *True*, 33 Maine, 367, it was held, that "testimony cannot be excluded as irrelevant, which would have a tendency, however remote, to establish the probability or improbability of the fact in issue." *Huntsman* v. *Nichols*, 116 Mass. 521, presents a similar decision upon similar facts.

It is held in the cases generally, that more liberality may properly be accorded to the admission of evidence affecting the probabilities of a hypothesis, where, if explainable, opportunity is left within the power of the opposing party to submit an explanation of it. *Stevens* v. *Bruce*, 21 Pick. 193, and *Sabine* v. *Strong*, are cases of the kind. In the case at bar, if the

offered evidence should not be denied by the paramour, or explained by her or any other witness, its weight and probative force would be all the more.

Evidence of the kind excluded, is especially relevant in matters of identity. "In questions of identity," says Wharton (Crim. Ev. 8th ed. § 27), "no matter how slight may be the inference of identity to be drawn from any single fact, it is admissible as a fragment of the material from which the indication is to be made." In *Com.* v. *Cooper*, 5 Allen, 495, in which dying declarations were shown to prove the identity of a defendant as the person who committed a crime, evidence was held to be admissible in reply, showing that the deceased had mistaken persons with whom he was well acquainted, and that he was in the habit of doing so.

Both in criminal and civil causes, and especially in criminal causes, evidence of collateral facts may be received for the purpose of confirming witnesses. *Llewellyn* v. *Winckworth*, 13 M. and W. 598; 1 Greenl. Ev. 13th ed. § 53, and cases in note; *Eaton* v. *Telegraph Co.* 68 Maine, at p. 68. In the case before us, the evidence was offered to corroborate the positive testimony of the respondent who was his own witness. While from the nature of things, the circumstances and details of different cases are seldom alike, multitudes of cases exist, and those before cited are specimens of them, in which evidence more remote and uncertain than that tendered and rejected in this case, has been held competent to be submitted to and be considered by the jury.

It was suggested at the argument, that the exceptions did not make it sufficiently apparent that the testimony was offered to disprove identity. It would be difficult to make the purpose of the respondent's counsel much plainer. First, Mrs. Tucker swears against the respondent. Then the respondent denies her statement; that is, he swears he was not the person described by her testimony. That is all that he could deny. Thereupon, in the same connection, he calls upon his witness to corroborate his denial, by stating facts that would corroborate it. The purpose is apparent from the association. *Noscitur a sociis.* The

allowance of the exceptions as made up is an admission by the Judge that the purpose of the offer was not misunderstood by him. Where testimony is apparently relevant and competent, the grounds for its admission are not usually stated, unless called for. It is unreasonable to imperil the liberty of a man in a criminal prosecution by so critical an objection.

*Exceptions sustained.*

APPLETON, C. J., WALTON, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.