STATE OF MAINE

*vs.*

CARL SEABURG

Oxford.   Opinion September 18, 1958.

David R. Hastings, for plaintiff.

Berman & Berman,
Dow & Dow, for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.  SIDDALL, J., did not sit.

SULLIVAN, J.   A jury found the respondent guilty of taking indecent liberties with a male person of the age of 15 years. R. S. (1954), c. 134, § 6. During the trial exceptions were taken to the admission of testimony and to the refusal

of the presiding justice to instruct the jury as requested. After verdict a motion was made to have the verdict set aside and a new trial granted. Upon the denial of such motion the respondent appealed. He now prosecutes his exceptions and appeal.

## EXCEPTION 1.

The complaining witness in direct examination over the objection of the defense was asked by the prosecuting attorney the following question concerning indecent liberties by the respondent and was permitted to make the ensuing reply:

"Q. At this time in November, was this the first time that Mr. Seaburg committed acts of this kind with you?

A. Yes, it was."

The testimony was offered and admitted by the court as relevant for any significance it might afford in characterizing any relationship between the respondent and the complainant.

There was no error. The situation here, the question, the ground assigned to justify it and the ruling of the court are patterned almost identically from the decided case and precedent of this court in *State* v. *Norton* (1955), 151 Me. 178, 180.

The respondent protests that "the County Attorney must be presumed to have known what the answer would have been and if he knew that the answer was going to be" yes, "then the only purpose of asking the question was to lay the foundation of the building up of prejudice in the minds of the jury against the respondent."

The question was proper and the answer proved to be favorable rather than detrimental to the respondent.

## EXCEPTION 2.

With the defense opposing, the witness was then interrogated by the State as to any indecent liberties practiced upon him by the respondent subsequent to those precisely charged in the indictment and in the specifications supplied thereunder and was permitted to recite that there had been some three more of such defilements over the period of time extending from November to the next January. Such evidence was received as pertinent to the topic of relationship between the respondent and the witness.

The challenged testimony was not admitted nor was it admissible in proof of the particular offense of which the respondent was accused here.

"It is an elementary principle in the law of evidence that when a respondent stands charged with the commission of a particular criminal act, evidence that he did a similar thing at some other time is generally deemed irrelevant and inadmissible. The considerations of justice underlying this rule are sufficiently obvious. The admission of such collateral facts in evidence would tend to place the defendant's whole life in issue on the charge of a single act, and oppress him with irrelevant matter of which he had received no notice and which he could not be prepared to meet. Proof of numerous other crimes similar to that charged may indeed have a tendency to show the accused to be devoid of all moral restraint and 'fatally bent on mischief' and thus, in a moral sense, increase the probability of his guilt with respect to the particular offense set out in the indictment, but such evidence does not for that reason become legally admissible when there is no question in regard to the nature of the act charged. Evidence that the defendant's general reputation is bad with respect to that element of character involved in the crime charged, or bad generally as a man of moral worth, might also tend in some degree to lay the foundation for

a presumption of guilt; but the rule is firmly established and unquestioned that such evidence cannot be received until the accused has opened the door by introducing evidence of his good reputation." *State* v. *Acheson* (1898), 91 Me. 240, 243.

See Wigmore on Evidence, 3d ed., Vol. 1, § 194, P. 646.

The testimony was entertained for a carefully discriminated, refined and relevant purpose.

"- - - to prove the mutual disposition of the parties, and to illustrate the nature of the intimacy shown by their conduct on the occasion in question; - - -"

*State* v. *Acheson,* 91 Me. 240, 244.

*State* v. *Witham* (1881), 72 Me. 531, was a trial upon an indictment for adultery. This court said:

P. 535.

"It is objected that this mode of trial involved the admission of evidence of acts of adultery happening both before and after the principal act complained of. Formerly, the criticism might have been regarded favorably in many courts. Latterly, however, courts and text-writers are rapidly falling in with the view, that acts prior and also subsequent to the act charged in the indictment, when indicating a continuousness of illicit intercourse, are admissible in evidence as showing the relation and mutual disposition of the parties; the reception of such evidence to be largely controlled by the judge who tries the cause, and the evidence to be submitted to the jury with proper explanation of its purpose and effect. We think this doctrine is most in accordance with the logic of the law and with the authorities. - - - - -"

In *State* v. *Williams* (1884), 76 Me. 480, 481, also upon the issue of adultery, we find:

"Evidence tending to show illicit intercourse by the defendant with the same person charged in the in-

> dictment, both before and after the day laid, is competent to prove the relation and mutual disposition of the parties. State v. Witham, 72 Maine, 531."

*State v. Witham* and *State v. Williams, supra,* were cases of contested accusation of adultery while the case at bar is one of a charge of indecent liberties. Yet, that accidental distinction notwithstanding, the evidentiary determinations of this court in the Witham and Williams precedents are soundly applicable to the problem of admissibility of the evidence which comprises the subject matter of respondent's EXCEPTION 2. The same decisive rationale serves equally well to demonstrate the competency, relevance and fairness of the controverted evidence in each of the three cases. The rules for attaining pertinent truth without prejudicial harm are constant and uniform in all three cases.

*State v. Kornegger* (1953), 363 Mo. 968, 255 S. W. (2nd) 765 was a trial for indecent liberties with a female child of 7 years. Evidence of such a transgression subsequent in time to the specific or principal offense described in the indictment was admitted. The court, in holding the evidence proper, said:

P. 768.

> "- - - But we think that under the above stated exceptions, and under the instant circumstances, the above stated events which subsequently occurred on April 19 were clearly admissible to establish not only the identity of the defendant and a common scheme and plan as to this prosecutrix but also as 'corroborative evidence to show a disposition upon the part of the accused and as tending to support the specific offense' for which defendant was on - trial - - - -"

*State v. Mitchell* (1948), 253 Wis. 626, 34 N. W. (2nd) 661 was a trial for indecent liberties with a 14 year old girl.

P. 662.

> "Defendant also contends that there was error on the trial by the introduction of Shirley's testimony as to similar acts of such unlawful misconduct by defendant in relation to her at other times.

> "The admission of that testimony did not constitute error. Evidence as to such other acts of indecent familiarity between defendant and Shirley was clearly admissible. - - - -"

In *People* v. *LaMantain* (1949), 89 Cal. App. (2nd) 699, 201 P. (2nd) 598, the defendant had been convicted of committing lewd and lascivious acts upon the body of a female child under the age of 7 years. Evidence of 2 such offenses, one on a Friday in February and another on the following Tuesday, had been introduced by the State. The law of California held the State to an election by the very act of the prosecution in presenting evidence of the offense of the earlier date. The court held that the following instruction was without reproach:

P. 599.

> "Although evidence was offered for the purpose of showing that on more than one occasion the defendant committed lewd or lascivious acts upon or with the body of Nancy Jane Spohn, you are not permitted to deliver a verdict of guilt in this case unless you find that the defendant committed the specific offense which, the prosecution alleges, was committed on or about March 2, 1948. That alleged offense and no other is the one of which the defendant now stands accused under the information. You may not, for the purpose of finding against the defendant distinct offenses or continued criminality, consider any evidence which tends to show other instances of lewd or lascivious conduct by the defendant with said child, but you may consider such evidence as tending to show, if you decide that it does tend to show, a lewd and lascivious disposition on his part toward said child and hence

as bearing on the question of intent and inclination at the time of the alleged specific crime, in respect to the charge of which your verdict must be given. As to such limited purpose for which such evidence may be considered, you will weigh it as you do all other."

*State* v. *Sebastian* (1908), 81 Conn. 1, was a prosecution upon an indictment for carnally knowing and abusing a female child of less than 15 years. There were 2 counts for two separate violations, one committed on April 9, 1907 and the other, between April 1 and August 12, 1907. The State elected to rely totally upon the first count. Testimony was introduced by the prosecutor of sexual intercourse on April 8th or 9th and of such intercourse in the following June or July. The court decided:

Page 3.

"Remote evidence, however, is not necessarily incompetent. Under the circumstances attending the case at bar, we are of the opinion that it cannot be said, as matter of law, that there was error in the admission of the testimony of this witness as to acts of sexual intercourse in June and July, whether received before or after the making of the election. It went to show the existence of relations between her and the defendant which tended to make the commission of the act of a similar nature, which was the subject of the charge, more probable, and so to confirm her previous testimony. That the accused was under the influence of a sexual passion in respect to this girl in July, which led him then to take advantage of her youth in order to gratify it, was logically relevant to the question whether he gave rein in the same manner to such a passion in respect to her, three months before. Thayer v. Thayer, 101 Mass. 111. One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or

more probable. State v. Blake, 69 Conn. 64, 76, 36 Atl. 1019."

Wigmore on Evidence, 3d. Ed., Vol. 11, §§ 395, 398, 399, comprehensively rationalizes and dispels the problem presented by respondent's EXCEPTION 2 and both *a priori* and by numerous cited authorities vindicates the doctrine of admissibility of the kind of evidence here disputed when such testimony is accepted for the same principles espoused by the presiding justice, whether the evidence be of acts committed before or after the principal or specific offense and whether the case involves adultery, bigamy, fornication, criminal conversation, sodomy, indecent liberties or incest.

§ 398.

"- - - - The circumstances that the prior or subsequent conduct exhibiting the passion is criminal does not alter the case nor affect the admissibility of the evidence - - - -"

(Quoted with approval in *State* v. *Desilets*, 1950, 96 N. H. 245, 247, 73 A. (2nd) 800, 802, unnatural and lascivious acts committed on 14 year old boy).

§ 399.

"- - - - The limits of time over which the evidence may range must depend largely on the circumstances of each case, and should be left to the discretion of the trial Court.

"A subsequent existence of the desire (sexual) is equally relevant with a prior one - - - -

"(c) The kind of conduct receivable to prove this desire at such prior or subsequent time is whatever would naturally be interpretable as the expression of sexual desire: - - - -

"Sexual intercourse is the typical sort of such conduct, but indecent or otherwise improper familiarities are equally significant. That the intercourse is also itself criminal is no objection."

The presiding justice gave the following heedful and admonitory instruction to the jury:

"There are some phases of the evidence that I want to briefly discuss with you. In the first place there was testimony in this case, against the objection of counsel for the respondent, of acts of indecent liberties upon Mr. Skinner by the respondent after the offense relied upon by the State. Now I will say to the jury at this time that this evidence, if you should find it to be true—it is denied by the respondent—but if you should find it to be true, that has no bearing upon the commission of the offense charged, except to show the relationship between the parties. The respondent is not on trial here for any of these acts which were charged by the State to have been performed after the main act, and because he may have committed another act later—of course the respondent denies he did— but if this jury should find he did commit another later act, it does not show he committed the prior act any more than if I went out and stole your automobile last night, and your father who lives over in the other end of town; you say that I stole his automobile on the night before because he missed his automobile the night before. In other words, if a man commits one offense it is no reason for determining that he has committed another. This particular testimony was only admitted for the purpose of showing the relationship between the two parties involved."

We must conclude that EXCEPTION 2 is without merit.

### EXCEPTIONS 3, 4 and 5.

The testimony of the complaining witness had dated the specific offense charged in the indictment as having occurred at a time in November. Against the objection of the respondent the complainant and another boy were permitted by the presiding justice to narrate that on an occasion during the previous August the respondent at his residence

had taught them how to play strip poker and that the respondent, the complainant, the other young witness and a third lad had thereupon engaged in such a contest in the fortunes of which the complainant and the companion witness had become wholly denuded. The justice admitted such evidence as relevant to explain the relation between the respondent and the complainant. The respondent protests that the court thus acted erroneously to the irreparable prejudice of the respondent.

This court has held that in an indecent liberties prosecution proof of prior acts of a nature similar to the principal offense charged in the indictment is admissible.

> "The respondent complains as to the admission of testimony that the female minor named in the indictment was permitted, over objection, to testify to acts of earlier happening between the parties, similar to the offense charged, and relies upon State v. Acheson, 91 Me., 240, 39 A., 570. The principle declared in that case is not applicable to the present. - - - In the instant case we have no exception to the charge nor could one have been taken, since the testimony was admitted only for the purpose of showing the relationship between the parties, for which it was entirely proper. State v. Witham, 72 Me., (adultery); State v. Williams, 76 Me., 480 (adultery); State v. Bennett, 117 Me., 113, 102 A., 974 (indecent exposure); State v. Buckwald, 117 Me., 344, 104 A., 520 (accepting money from prostitute); State v. Morin, 126 Me., 136, 136 A., 808 (permitting tenement to be used for prostitution). In point of fact the danger of misapprehension was eliminated by a special instruction given to the jury after consultation with counsel to the effect that respondent was not being tried 'upon what occurred before the offense complained of' in the indictment."

*State* v. *Berube* (1942), 139 Me. 11, 13.

The evidence contested by these exceptions would not suffice, to be sure, to prove the equivalent of a prior act similar to the offense specified in the indictment. There is considerable gradation separating the loathsomeness of taking indecent liberties and the reprehensibility of playing strip poker even as described in this case. Yet the difference is not of kind but of degree in the logic of the subject now considered. The controverted evidence purported to attest that the respondent instructed the youths how to play the game and that the game was suffered by the respondent to progress beyond the limits of masculine and virile decency. The episode was not droll as recounted. Of the available recreations to have been fostered for the diversion of youth this became a sordid selection as related. The narrative told was not that of the behavior of a normal man. There is no question of intent involved in the crime of indecent liberties. The evidence here considered was offered as an instance of the prior conduct of the respondent to indicate emotion or lust in the respondent toward the complainant and as proof of undue familiarity. If such evidence was conceded credence by the fact finding jury, that body could understandably and within the bounds of right reason have considered it significant in deciding upon a verdict.

§ 398.

"The prior or subsequent existence of a sexual passion in A for B is relevant, - - - - to show its existence at the time in issue - - - -

§ 399.

"- - - - (a) That, in general, a sexual desire of A for B is relevant to show the probability of A's doing that which will realize this desire cannot be and is not questioned; and no evidential difficulties arise at this point:

- - - - - - - - - -

"1878, Wheeler, J., in State v. Bridgman, 49 Vt. 210: 'The offense charged in this case (adultery) cannot ordinarily be committed till the restraints

of natural modesty and the safeguards of common deportment and conventionality have been overcome by gradual approaches and the relations of the parties have been changed from those usually existing between the sexes to the most intimate - - - Thus it appears that the true relation of the parties to each other in this respect is very material and proper to be shown.'

- - - - - - - - - -

"(b)  That this desire at a prior or subsequent time is relevant to show the probable existence of the same desire at the time in issue is equally clear.

- - - - - - - - - -

"Sexual intercourse is the typical sort of such conduct but indecent or otherwise improper familiarities are equally significant - - - -"

Wigmore on Evidence, 3d Ed., Vol. 11.

The presiding justice very properly and fairly in his instructions delivered the following caveat to the jury:

"Now there was some evidence in regard to a strip poker game, and that testimony was only permitted for the purpose of showing that relationship between the parties. Now it is not a crime to play strip poker, if they did play strip poker. That has not bearing upon the guilt or innocence of the respondent for the crime with which he is charged, except that it does show to the jury, if you did find it to be true, the relationship between the parties, and you may only take into consideration in connecting that particular testimony up with the guilt of the respondent or the innocence of the respondent the bearing it has in so far as the relationship of the parties is concerned. - - -"

The evidence at issue in EXCEPTIONS 3, 4 and 5 was relevant and was submitted to the jury with every fit precaution.

### EXCEPTION 8.

Seasonably at the close of the charge of the presiding justice the respondent requested in writing this instruction:

"An accusation of this nature is easily made but difficult of refutation except by the denial of the accused."

The court declined to render the instruction *in eisdem verbis* and this exception was duly taken.

The presiding justice had already reviewed the subject matter with the jury in this context:

"- - - Your role in this case will be to determine what did happen there; whether Mr. Skinner is telling you the truth or whether the respondent is telling you the truth. The State's case in this particular prosecution stands or falls upon the testimony of Mr. Skinner. I think counsel on both sides have suggested that same thing to the jury. Unless you are satisfied of the true version of Mr. Skinner's story, you reach the end of this case and you must find the respondent not guilty.

Now there has been some argument about corroborative testimony. The State says that we have some corroboration to this extent, that we had one witness who went there to the house with Mr. Skinner, but as to the main event charged, as to whether or not there were indecent liberties taken of the private parts of the young man there is no corroboration as to that particular event. I am going to instruct this jury as a matter of law that it is not necessary in cases of this kind that there be corroboration by what has been termed the corroborating witness. It is not necessary that there be corroboration of the testimony of Mr. Skinner by any other witness. Crimes of this sort, if a crime were committed, are not ordinarily committed in the presence of witnesses. If witnesses had to be obtained to show that indecent liberties were performed, probably there would be very few convictions in indecent liberties cases, because those are crimes that do not ordinarily take place in the presence of the public. I will say to you, however, that you should of course in cases such as this closely scrutinize the testimony of Mr.

Skinner as to his probative value. Now what his probative value may be in the final analysis is a question for this jury to determine. You are to determine whether it has or whether it has not that probative value which, taken together with the other circumstances in the case, convinces you of the guilt of the respondent beyond a reasonable doubt. That is the role which this jury will have to play in the solution of this case. Was the story of this young man Skinner, was it a trumped up story? Was it a figment of his imagination, as was argued I believe by one counsel, or at least suggested? Was it a mirage of his mind as we sometimes say? Was it perjured testimony or was it the truth? If it wasn't the truth, why wasn't it? That is always a good question to ask in determining whether a person is telling the truth or not. Ask yourself, if this particular witness is not telling the truth, why isn't he telling the truth. Was the witness biased? Was he biased against the respondent? Does that account for his story? Did he have an ax to grind against somebody, as we used to say in the old days? We used to use an ax more than we do today. Did he have an ax to grind against the respondent? Did he have the sort of mind that was prone to wander into the realm of fantasy, which was suggested by one of the counsel, or was what he said the truth? You apply the same yardstick to the testimony of all the witnesses in this case. You apply the same yardstick to the testimony of the respondent that you do to the testimony of Mr. Skinner and the other witnesses for the State. You take into consideration, in determining the value of their testimony, their demeanor on the stand. What impression did the witnesses in this case make upon this jury as they respectively testified? Did the witnesses appear to be telling the truth, the whole truth and nothing but the truth, or was there some evasiveness about the answers of the witnesses? Did the witnesses meet the questions that were asked of them on direct and cross-examination head-on, or did they kind of slide and slip around

a bit in making their answers? What about the reasonableness of the story of the witnesses in this case—the reasonableness of the story of the witnesses in and of itself or the reasonableness of the story in connection with facts in the case which this jury finds to be the facts? Was Mr. Skinner—there has been argument on both sides about this—was he biased against this respondent? Is that the reason why he told this story on the witness stand? If he was biased, why was he biased? You will have to analyze the testimony relating to Mr. Skinner playing hooky from school. You will have to determine what the facts are with reference to what happened after that; the punishment, if there was a punishment. You will have to determine whether he is biased or not; what sort of feeling he had toward the respondent in the light of the testimony in regard to this playing hooky incident. What about the failing mark he received in school? What is the story on that? Did he receive a failing mark? Who was responsible for it? Did the young man take offence at it? If he did take offence, from your observations of the young man, taking into consideration all of these questions, was he biased and did that bias affect his testimony? Was it the motivating cause for his coming here and testifying as he did testify? Was he testifying as to what happened or what he says happened up there in the room that night truthfully and honestly, or was he testifying falsely because he had a gripe against the respondent in this case? That is one of the questions you may wish to ask yourselves when you retire to your jury room to deliberate on this case."

The justice's charge contained all the fundamental requisites as to the State's burden of proof beyond a reasonable doubt, the presumption of the respondent's innocence and so forth.

"The Court is not bound to state a requested instruction in the words of the request in regard to anything properly covered in the charge as given.

State v. Cox, 138 Me. 151; State v. McKracken, 141 Me. 194; State v. Bean, 146 Me. 328."

*State* v. *Whitehead* (1955), 151 Me. 135, 143.

"The - - - exception, therefore, has reference to the refusal of the presiding judge to give the - - - instruction requested by the defendant. But upon review of the charge, we are satisfied that while the language of this request was not adopted, its substance, so far as material to the issue was clearly embraced in the rulings given."

*Foye* v. *Southard* (1873), 64 Me. 389, 398.

"- - - The right of counsel to call for instructions in matters of law does not comprehend a right to have his arguments repeated and endorsed by the presiding Judge, but only to have the question upon which the jury are to pass, correctly presented to them - - - - -"

*Hovey* v. *Hobson* (1867), 55 Me. 256, 277.

"- - - - The instructions given are full and comprehensive upon the part of the case to which the exceptions relate. They gave the jury clearly to understand that it was their duty to weigh all the evidence and give the defendant the benefit of all reasonable doubt; no further or more explicit instruction was required. The defendant had no right to have an instruction given in such phraseology as he saw fit to ask, provided sufficient instruction was given, touching the matter requested, to clearly lay before the jury their duty in the premises. - - -"

*State* v. *Williams* (1884), 76 Me. 480, 481.

The instructions of the presiding justice were conscientious, fair and fulsome and, as for the requested but declined statement, "so far as material to the issue it was clearly embraced in the rulings given." *Foye* v. *Southard, supra.*

APPEAL.

Respondent complains that the justice did not define the word "relationship" for the jury. We cannot concede that his failure so to expatiate upon that commonplace term could have resulted in any real void. The law is, therefore, clear.

> "- - - - Yet an attorney has a duty in connection with such trials and ordinarily he cannot take advantage of such an omission unless before the jury retires he calls the attention of the Court to it. He cannot sit by, remain silent, and secure an advantage, when as an officer of the Court, he should call the Court's attention to such omission.
>
> 'If either party thinks any material matter has been misstated, or over-stated, *or omitted,* he should ask for proper corrections before the jury are finally sent out. He ought not to be silent then, when corrections can be made, and complain afterwards, when corrections cannot be made.' Murchie v. Gates, 78 Me., 300, 306, 4 A., 691, 701 (Italics ours)."

*State* v. *Smith* (1944), 140 Me. 225, 284.

Compare, also, Rule of Court 18, 147 Me. 471.

The appeal must be dismissed. *State* v. *Smith, supra,* aptly states our conclusions:

> "- - - - On the appeal the only question before us is whether in view of all the testimony the jury was warranted in believing beyond a reasonable doubt that the respondent was guilty. - - - A careful and painstaking study of the record convinces us that the jury was so warranted."

*State* v. *Smith,* 140 Me. 286.

The mandate must be:

*Exceptions overruled.*
*Appeal dismissed.*
*Judgment for the State.*