**STATE of Maine**

v.

**Jeffrey D. RANDALL.**

Supreme Judicial Court of Maine.
Argued Sept. 12, 1985.
Decided Nov. 4, 1985.

John D. McElwee, Dist. Atty. (orally), Caribou, for plaintiff.

Daniel W. Bates (orally), Daniel G. Lilley, P.A., Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

Jeffrey D. Randall, the Defendant, appeals from his conviction of unlawful sexual contact, 17–A M.R.S.A. § 255 (1983) and assault, 17–A M.R.S.A. § 207 (1983), following a jury trial in Superior Court (Aroostook County). He argues that the

jury instructions unfairly emphasized the testimony of certain witnesses, thereby denying him a fair trial. Agreeing with him, we vacate the judgment of conviction and remand the case to Superior Court for further proceedings.

At trial the victim testified that in the late evening of October 8, 1984, she had noticed that her dog was missing from her Mapleton home. She took a flashlight and began walking towards a store more than a mile away, thinking that the dog had perhaps gone in that direction. Not finding the dog, she turned back. As she returned, she encountered the Defendant, who drove up behind her in a pickup truck and asked if she would like a ride. She declined, explaining that she was looking for her dog. The Defendant drove off, and she continued her walk towards home. A short distance along her way she again saw the Defendant standing beside a television relay building. He told her that her dog was behind the building and she followed him in that direction. She testified that as she walked around the building the Defendant grabbed her flashlight and then threw her to the ground. She struggled and tried to squirm away, but the Defendant pulled down her jeans and pulled up her sweater. She testified that the sexual contact then ensued. When the Defendant released her, she ran back to her home. Two state troopers arrived shortly thereafter in response to a call.

On his part the Defendant took the stand and stated that on the day in question he remained home all evening. One of the investigating state troopers, however, testified that the Defendant made an inculpatory statement concerning the incident, quite consistent with the victim's version of the event. The Defendant admitted speaking to this state trooper and answering some of his questions but denied that he made any inculpatory statement. He asserted that he told the state trooper he had been at home all evening.

The Defendant argues that the Superior Court's jury instructions were fundamentally unfair for two reasons. First, the instructions foreclosed the jury from considering the factual question of whether the Defendant had ever made an inculpatory statement to police. Second, the instructions impermissibly commented on the credibility of the state troopers. The Superior Court had charged the jury as follows:

> Then, you have the state troopers who testified. You must remember that they were under oath and they are sworn officers of the law. It is their duty to investigate courses of conduct and complaints made to them with absolute fairness and impartiality. They have to take just as much interest in the exoneration of the innocent as they do with a conviction of the guilty. You have the right to take into consideration their experience and interest on the stand and their interest in this case. Do you think they were telling the truth or don't you? Those are facts for you to consider....

> Now, you have an exhibit here, one is handwritten and another is typewritten copy of it which defense counsel has referred to as a confession. Confessions may be given weight by the jury if that confession is voluntary. People don't have to confess anything. The Constitution protects people against answering questions which would tend to incriminate one. Was this statement made to Trooper Willey, if that is who it was made to, did it contain conduct from which admissions of guilt could be inferred? If it did it is up to you to give those such weight as you think it deserves.

> You have a right to draw inferences from proven facts as you feel your common sense and experience entitles you to draw from them.

Shortly afterwards defense counsel approached the bench and objected to the above instructions. Thereupon the presiding justice attempted to meet the substance of the Defendant's objection with the following instruction:

I also want you to bear in mind that when I discussed evidence I only discussed it for illustrative purposes and I don't ask you to draw any inference that I feel any one witness' testimony is any more viable as fact for you to consider than any other. When you appraise the testimony of the State's witnesses and all of the Defendant's witnesses you are the ones who are going to decide whose testimony you believe and who you don't believe. Although I may have made a comment, illustrative of one or two of the witnesses, I don't mean to limit your consideration of those witnesses. You can accept or reject their testimony freely as you feel that you should, depending on your evaluation of their testimony. Anything further, Gentlemen?

[PROSECUTOR]: No.

[DEFENSE COUNSEL]: No.

The jury then entered upon its deliberations.

■ At the threshold we note that defense counsel failed to renew his objection after the final instruction; thus the presiding justice could infer that the additional charge was satisfactory to the Defendant. Therefore, as the Defendant concedes, the alleged errors in the instructions were not preserved for appellate review. Accordingly, we examine the instructions here to determine whether they were so obviously erroneous that the Defendant was denied a fair trial. *State v. Pomerleau*, 363 A.2d 692, 698 (Me.1976).[1]

■ By saying that the state troopers who testified at trial were "sworn officers of the law" and by suggesting that the troopers were just as interested in the exoneration of the innocent as they were in the conviction of the guilty, the presiding justice improperly intimated to the jury that the state troopers were more believable than other witnesses; accordingly, the jury might infer that they should give the troopers' testimony greater weight.[2]

■ Likewise the presiding justice's reference to the victim's testimony may have presented the jury with the stark and misleading choice between truthfulness and perjury. The jury was foreclosed from evaluating the credibility of the witnesses and the possibility that the victim might be honest but mistaken in her testimony. This instruction impermissibly diminished the jury's function of evaluating the credibility of the witnesses. *See State v. Crocker*, 435 A.2d 58, 77 (Me.1981) (determining credibility of witnesses is within exclusive province of jury).

■ In the original instruction the presiding justice may also have precluded the jury from considering the factual question of whether the Defendant ever made an inculpatory statement to police. His instruction, though not clear, was certainly capable of such an interpretation. The justice thus appears to have decided this factual issue himself, leading the jury to accept as fact that the Defendant indeed had made the statement. In so doing, the justice effectively destroyed the core of the Defendant's case, that the police had fabri-

---

1. In *Pomerleau* the instructions had the effect of suggesting that the State's failure to produce a bag of allegedly stolen money was of no consequence and tended to rehabilitate the credibility of an accomplice witness by suggesting that the witness would not lie in his father's presence. *Id.* at 695–96. Defense counsel objected to that instruction and the presiding justice supplied additional instructions. *Id.* at 697. Those instructions reminded the jury that it was up to them to decide whether the non-production of the bag and money was of no consequence, offered a definition of an "accomplice," and warned the jury to consider the accomplice witness's testimony very carefully. *Id.* at 697–98.

We found the additional instructions were sufficiently "ameliorating and corrective" that the instructions, in their entirety, did not deprive the defendants of a fair trial. *Id.* at 699.

2. *See State v. Gribbin*, 360 A.2d 517, 518 (Me. 1976) (impermissible for presiding justice to suggest that deputy sheriff is automatically more credible than defendant); *State v. Hamrick*, 160 W.Va. 673, 236 S.E.2d 247, 248 (1977) (instruction affording greater weight to testimony of police officer than to that of other witnesses constitutes reversible error).

cated the statement that they were attributing to the Defendant.

■ Our review is not completed, however, until we consider the instructions as a whole, including the additional instruction. *Pomerleau*, 363 A.2d at 699; *State v. Cote*, 462 A.2d 487, 490 (Me.1983). Here, the additional instruction was inadequate to correct the errors in the original instructions. The presiding justice did not attempt to address those errors directly; instead, he admonished the jury in general terms to consider the credibility of witnesses. In no way was the jury deterred from believing that the police were more to be believed than other witnesses or that the victim was worthy of belief unless she was found to have perjured herself. Furthermore, the instruction never dealt with defense counsel's objection concerning the authenticity of the Defendant's statement.

We conclude that the additional instruction lacked an "ameliorating and corrective" effect upon the errors in the original instructions. Those errors were so deeply prejudicial as to deny the Defendant the fair trial to which he was constitutionally entitled.

The other issues raised on appeal do not merit consideration here.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.