**STATE of Maine**

**v.**

**James DeLONG.**

Supreme Judicial Court of Maine.
Argued Sept. 12, 1985.
Decided Feb. 26, 1986.

804

R. Christopher Almy, Dist. Atty., Philip Worden, Asst. Dist. Atty., (orally), Bangor, for plaintiff.

Marshall T. Cary, (orally), William N. Palmer, (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Following a jury trial, the Superior Court (Penobscot County) convicted defendant James DeLong of four counts of incest, 17–A M.R.S.A. § 556 (1983), which he committed upon his minor daughter. On appeal defendant argues that the Superior Court erred 1) in admitting evidence of other sexual acts between him and the victim, 2) in keeping the jury deliberating until 12:40 a.m., thereby allegedly coercing the jury into a verdict, and 3) in allowing the prosecutor to disparage the defense in closing argument. Defendant also makes an assertion of insufficiency of the evidence in regard to both the Superior Court's denial of his motion to suppress certain evidence and the jury's verdict finding him guilty of the crimes as charged.

### I. Other Sexual Activity

 Over defendant's objection, the presiding justice, after giving the jury a limiting instruction, permitted the victim to testify at trial to incestuous conduct of her father, defendant DeLong, beyond the four instances charged in the indictment. She testified that between her ages of 12 and 18 her father subjected her to a steady course of sexual intercourse, which occurred almost twice weekly. On appeal, defendant's sole complaint as to the admission of this evidence is that the justice erred in applying the balancing test of M.R. Evid. 403. We do not agree. An appellate court on this record has no basis for declaring that the presiding justice exceeded the bounds of reasonable discretion in concluding that the probative value of the evidence of other criminal acts was *not* substantially outweighed by any danger of unfair prejudice.

This court has long recognized that evidence of prior or subsequent acts similar to the charged offense is admissible for any permissible purpose other than to prove the character of the defendant to show that he acted in conformity therewith. For more than a century our case law has declared that evidence of a defendant's prior or subsequent sexual relations with a victim is admissible to show the relationship between the parties or the intent of the defendant. *See, e.g., State v. Witham,* 72 Me. 531, 535 (1881) (evidence of prior acts similar to charged offense admissible to show relationship between parties in prosecution for adultery); *State v. Williams,* 76 Me. 480, 481 (1884) (same); *State v. Acheson,* 91 Me. 240, 244–45, 39 A. 570, 571–72 (1898) (evidence of subsequent act similar to charged offense admissible to show intent in prosecution for assault with attempt to ravish a minor; vacated, however, for failure to give limiting instruction); *State v. Berube,* 139 Me. 11, 14, 26 A.2d 654, 655 (1942) (evidence of prior acts similar to the charged offense admissible to show relationship between parties in prosecution for indecent liberties with a minor); *State v. Norton,* 151 Me. 178, 181, 116 A.2d 635, 636–37 (1955) (same); *State v. Seaburg,* 154 Me. 162, 163–78, 145 A.2d 550, 551–59 (1958) (same). *Cf. State v. Bennett,* 117 Me. 113, 115–16, 102 A. 974, 975 (1918) (evidence of prior acts similar to charged offense admissible to show intent in prosecution for indecent exposure); *State v. Buckwald,* 117 Me. 344, 346, 104 A. 520, 521 (1918) (evidence of prior acts similar to charged offense admissible to show intent in prosecution for accepting money from a prostitute); *State v. Morin,* 126 Me. 136, 139–40, 136 A. 808, 810 (1927) (evidence of prior acts similar to charged offense admissible to show intent in prosecution for operating house of prostitution).

That long and unbroken line of precedents "is still valid today" under the Maine Rules of Evidence, which became effective on February 2, 1976. *Pierce v. State,* 463 A.2d 756, 761 (Me.1983). M.R.Evid. 404(b) excludes only "[e]vidence of other crimes, wrongs or acts . . . to prove the character of a person in order to show that he acted in conformity therewith." [1] Such evidence, however, may be admissible for any other permissible purpose. *State v. Pierce,* 474 A.2d 182, 185 (Me.1984) ("If . . . the presiding justice determines . . . that the evidence

---

1. M.R.Evid. 404(b) is identical to Fed.R.Evid. 404(b), with one exception. It omits the second sentence appearing in the federal rule, which reads: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, the advisers' note to M.R.Evid. 404(b), citing prior Maine cases, declares that Rule 404(b) does not exclude evidence of other crimes, wrongs, or acts when offered "for another purpose, such as proof of motive, opportu-nity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," the very same purposes expressly permitted by the federal rule. *See* M.R.Evid. 404(b) advisers' note, *reprinted in* Field & Murray, *Maine Evidence* 67 (1976). The drafters of Maine Rules of Evidence presumably concluded that the omitted sentence adds nothing to the rule since it merely illustrates the other purposes for which the first sentence does not make the evidence of other crimes inadmissible.

is offered for a purpose other than establishing character, he may, in his discretion, admit the testimony"). Thus, evidence of defendant's continued sexual activity, including a specific prior or subsequent act similar to that charged, is admissible for several other purposes that are "probative of some element of the crime for which the defendant is being tried." *State v. Goyette*, 407 A.2d 1104, 1108 (Me.1979). In the case at bar, evidence of prior incestuous acts was relevant and admissible to show the relationship between the parties that in turn sheds light on defendant's motive (i.e., attraction toward the victim), intent (i.e., absence of mistake), and opportunity (i.e., domination of the victim) to commit the crimes with which he was charged. *See Pierce v. State*, 463 A.2d at 761. *See generally McCormick on Evidence* § 190 (E. Cleary 3d ed.1984); 2 Wigmore, *Evidence* §§ 398–400 (Chadbourn rev.1979). Other jurisdictions follow this rule. *See, e.g., Collins v. State*, 669 S.W.2d 505, 507 (Ark. App.1984); *Elliott v. State*, 600 P.2d 1044, 1047–49 (Wyo.1979) (and cases cited therein). *See generally* Annot., 77 A.L.R.2d 841, 878–80 (1961).

On appeal defendant recognizes that Evidence Rule 404(b) does not bar the admission of the evidence of defendant's course of incestuous conduct with his daughter. He founds his appellate argument exclusively upon Evidence Rule 403.[2] He fails, however, to persuade us that the presiding justice committed any error in balancing the relevant probative value of this evidence against any danger of unfair prejudice from it. As we said in *State v. Wallace*, 431 A.2d 613, 616 (Me.1981):

> The presiding justice has broad discretion in ruling on the admissibility of evidence challenged as unfairly prejudicial; review of such rulings focuses on wheth-

er there was an abuse of discretion. *State v. Heald*, [393 A.2d 537, 542 (Me. 1978)].

Defendant takes nothing on his first argument on appeal.

## II. Alleged Jury Coercion

 As his second issue on appeal defendant urges that the presiding justice coerced the jury into its verdict by keeping them deliberating beyond a reasonable hour and by then impatiently imposing a time limit. Since this issue is raised for the first time on appeal, we review for obvious error only. M.R.Crim.P. 52(b); *State v. True*, 438 A.2d 460, 468–69 (Me.1981).

The length of time a jury should be kept deliberating is a matter vested within the sound discretion of the trial justice. *See State v. Hodgkins*, 238 A.2d 41, 42 (Me. 1968). *See also Hinton v. State*, 272 Ind. 297, 397 N.E.2d 282, 284 (1979); *State v. Crowley*, 220 Kan. 532, 552 P.2d 971, 975 (1976); *Commonwealth v. Watkins*, 375 Mass. 472, 379 N.E.2d 1040, 1052 (1978); *State v. Anderson*, 698 S.W.2d 849, 853 (Mo.1985); *Farmer v. State*, 95 Nev. 849, 603 P.2d 700, 704 (1979). Whether that discretion was abused is determined by viewing the totality of the circumstances in each case. *United States v. Coast of Maine Lobster Co.*, 557 F.2d 905, 911–12 (1st Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977). Under the obvious error rule, remarks addressed to a jury after retirement warrant reversal only if the additional instruction, viewed in the context of the charge as a whole, constitutes highly prejudicial error tending to produce manifest injustice. *State v. Quint*, 448 A.2d 1353, 1355 (Me.1982).

In the case at bar the jury began deliberations at 3:40 p.m. and did not reach a

---

**2.** At no time did counsel for defendant, *either* at trial in the Superior Court *or* in his brief and oral argument presented to this court on appeal, see fit to raise any objection whatever to the limiting instructions given by the presiding justice. In those circumstances, any seeming inconsistency of a part of those limiting instructions with the provisions of M.R.Evid. 608(b)

falls within "the familiar principle that points not preserved at trial or argued on appeal are considered waived." *State v. Boilard*, 488 A.2d 1380, 1391 (Me.1985) (citations omitted). "[W]e are not willing to reach out, without the help of either written or oral argument of counsel on either side, to decide legal contentions nowhere raised by defendant." *Id.*

verdict until 12:40 a.m. During the late afternoon and evening, the jury requested further instructions on elements of the crime charged and several "readbacks" of testimony. After each of the "readbacks" the court questioned the foreman as to whether further deliberations would be useful and received affirmative answers. At 12:20 a.m., after the final requested "readback" was accomplished, the following exchange occurred:

> THE COURT: ... It's now 12:20 a.m., and, Mr. Foreman, if there are any problems with any juror who is—I'm concerned about jurors staying up too late, and I just want to make sure that you take full time for deliberations and that—but that you move forward with dispatch in view of the time. I'm concerned about the time, so that I would again—it's an important case. It's taken three days trial. It's important. We hope that we can resolve the case, and you think that further deliberations would be beneficial, Mr. Foreman?
>
> THE FOREMAN: I do.

On appeal defendant contends that the 9½ hours of deliberations created problems of exhaustion that caused the opinions of individual jurors to be overcome by the majority and that the judge's statement "to move forward with dispatch in view of the time" further coerced an already weary jury into a decision.

We disagree. When viewed in the totality of the circumstances the presiding justice's handling of the jury during its deliberations did not overstep the bounds of his allowable discretion. Although the jury was out for many hours, it acted alertly throughout the evening by requesting "readbacks" and further instructions. In addition, the foreman responded affirmatively on at least two occasions to the justice's inquiries whether further deliberations would be useful. The fact that the jurors did not at the time appear too exhausted to reach a just verdict is further evidenced by the complete failure by defendant and his counsel, who were present on the occasions when the jury returned to the courtroom, to make any objection whatever to the continued deliberations or to the justice's additional instructions. *Cf. State v. True*, 438 A.2d at 468 ("trial counsel's failure to object to inadmissible evidence, whether as a result of tactical decision or oversight, will itself be a consideration in determining whether the error is obvious and highly prejudicial").

Moreover, the justice's remarks about "moving forward with dispatch," viewed *in context* as they must be, do not appear coercive. Prior to his request that the jury move with dispatch, the justice expressed concern about juror fatigue and the necessity for jurors to take enough time for full deliberations. Further, in his remarks to the jury at approximately 10:05 p.m., the justice, while instructing the jury with a view towards encouraging agreement, also cautioned individual jurors not to relinquish their views for the sake of consensus. Looking at the totality of the circumstances, we can find no error at all in the way the presiding justice handled the jury that convicted defendant.

### III. Allegedly Improper Closing Argument by the State

■ Defendant next contends that two remarks made by the prosecution in closing argument deprived him of a fair trial. The prosecution criticized the defense strategy to discredit the prosecutrix by calling two of her friends to testify, stating:

> You heard from [name deleted], a dear friend ... of the victim. She never knew anything about this incest. She does now. The victim's friend has been brought into it.

Defendant seasonably objected to those comments and argues on appeal that those statements seriously prejudiced his case by implying that he had an improper motive for calling those witnesses. Because the alleged error was preserved by objection, we review defendant's contention under the harmless error rule. M.R.Crim.P. 52(a). Although the prosecution's remarks were impertinent, any error was harmless be-

cause we confidently conclude that it is "highly probable that [such remarks] did not affect the judgment." *State v. True,* 438 A.2d at 467.

■ Defendant also complains, for the first time on appeal, of the following remarks by the prosecution:

> Throughout this entire defense, ladies and gentlemen, you're constantly saying, well, what kind of mother is Luella DeLong? Remember, she is not on trial, and what kind of a sister is Donna? Donna DeLong is not on trial. That man right over there is (indicating). They're not focusing in on the issues of this case. They are trying to develop a smoke screen to divert your attention from the real issues when they suggest to you that Donna DeLong and Luella DeLong are at fault.

Because defendant failed to object at trial, we review defendant's contention under the obvious error rule. M.R.Crim.P. 52(b). The record shows that the prosecutor appropriately used his closing argument to review the evidence and "present his analysis in summation with vigor and zeal" by "highlighting absurdities or discrepancies" in defendant's case. *State v. Smith,* 456 A.2d 16, 17 (Me.1983). Although the prosecution's argument may have "denigrat[ed] [the] defense strategy," he did so by sticking to the legal issues and marshalling the evidence. *State v. McDonald,* 472 A.2d 424, 426 (Me.1984). *See also State v. Collin,* 441 A.2d 693, 697 (Me.1982). We can find no error, to say nothing of the obvious error necessary for vacating the results of defendant's trial.

### IV. Sufficiency of the *Miranda* Warnings

■ Defendant contends that the Superior Court justice, who denied his motion to suppress all statements he had made to the police, was clearly in error in finding that the police had complied with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The issue arises only because on the three

successive occasions when the police officer, before questioning defendant, read the *Miranda* rights from his *"Miranda* card," he omitted the final question on the card, "Now having all the rights in mind, which I just explained to you, do you wish to answer questions at this time?" That omission, however, was not fatal to the prosecution's use at trial of the statements that defendant made after being fully advised of his right to remain silent and to have counsel.

■ The *Miranda* case does not require that the specific final question be asked; it only requires, before a person is put under custodial interrogation, that he be fully informed of the rights delineated in *Miranda* and that he knowingly waive those rights. An explicit oral or written statement of waiver is not required. *North Carolina v. Butler,* 441 U.S. 369, 373, 375–76, 99 S.Ct. 1755, 1757, 1758–59, 60 L.Ed.2d 286 (1979); *State v. Hazelton,* 330 A.2d 919, 925 (Me.1975). Whether there has in fact been a waiver of *Miranda* rights must be decided upon the facts of each case. *See State v. Carter,* 412 A.2d 56, 61 n. 4 (Me.1980). At the suppression hearing the State had the burden of proving, by the federal standard of proof by a preponderance, that the police complied with *Miranda*'s mandates. *State v. Bleyl,* 435 A.2d 1349, 1358 (Me.1981). The police read defendant his *Miranda* rights three times before starting their questioning; he affirmed that he understood each right; he consented to the taping of the interview; and he responded without hesitation to the questions. After reviewing all the evidence before the motion justice, we cannot find any clear error in his factual conclusion that the State had met its burden of showing that the police had satisfied *Miranda.*

### V. Sufficiency of the Evidence

■ Defendant finally contends that the evidence was insufficient for the jury to have found him guilty of the four counts of incest charged in the indictment. We

cannot agree. An incest conviction is sustainable even though it is based solely on the uncorroborated testimony of the victim. *State v. Frost,* 315 A.2d 198, 199 (Me.1974). While his daughter's testimony by itself would have been sufficient to convict him, her testimony was also corroborated in many respects by other witnesses. By no means can we say that no trier of fact rationally could find defendant guilty beyond a reasonable doubt. *State v. Barry,* 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgments of conviction affirmed.

VIOLETTE, WATHEN, and SCOLNIK, JJ., concurring.

GLASSMAN, Justice, with whom NICHOLS, Justice, joins, dissenting.

I respectfully dissent. The court's limiting instruction concerning the admission of the testimony of the victim of other sexual acts of the defendant with the victim not encompassed by the indictment was manifest error. To ensure the basic integrity of the judicial process and the constitutional right of a defendant to a fundamentally fair trial, we notice an error that works substantial injustice even though, as here, it was not brought to the attention of the trial or appellate court. *State v. Brunette,* 501 A.2d 419, 423 (Me.1985); M.R.Crim.P. 52(b). Accordingly, this record is reviewed to determine, after considering all the circumstances of the trial, if there exists a "reasonable possibility" that a proper instruction would have resulted in a different verdict. *State v. Michaud,* 473 A.2d 399 (Me.1984).

The jury was instructed on three separate occasions as to the purpose for the admission of testimony concerning the defendant's other sexual acts with the victim. Before the victim or the defendant testified, the trial court instructed the jury:

You may consider such testimony of such other sexual acts ... for the limited purpose of proving the relationship and mutual disposition of the parties as it may relate to opportunity or a course of conduct on the part of the Defendant and as it may bear on the credibility of the testimony of the witnesses in this case.

During the victim's testimony, the court again instructed the jury:

I would again remind you of the instruction I gave you before concerning other acts of sexual activity ... other acts, if there is testimony concerning them, would be offered for the limited purpose as I indicated to you of showing opportunity, course of conduct, credibility of the witnesses, and the relationship of the parties; and those are limited purposes....

And, finally, at the conclusion of all the evidence, the trial court instructed:

Again, I would remind you of the instruction I gave you before. There has also been some testimony concerning other sexual acts, and that evidence was admitted before you for limited purposes, ... to show a course of conduct and the relationship of the parties and admitted as it relates to the credibility of the parties.

I do not dispute that evidence of other misconduct may be admissible when offered for purposes other than to prove a defendant's character in order to show he acted in conformity therewith. *See State v. Berry,* 495 A.2d 1207, 1210 (Me.1985); M.R.Evid. 404(b) advisers' note. However, in not one of the cases relied upon by the court was evidence of prior misconduct admitted as it related to a witness's credibility. M.R.Evid. 608(b) clearly limits inquiry into specific instances of conduct of a witness for the purpose of attacking or supporting his credibility, to cross-examination of the witness concerning his character for truthfulness or untruthfulness. Here, the evidence of the defendant's prior misconduct was admitted in the State's case in chief without any attack having been made on the credibility of the victim, as required by M.R.Evid. 608(a)(2). *See State v. Berry,* 495 A.2d at 1210 (logical and just to admit evidence of defendant's additional sexual

advances as rebuttal testimony to rehabilitate the prosecutrix when defendant opened the door by attacking her credibility).

By not addressing the trial court's improper instruction, the court impliedly finds that the clear violation of Rule 608 did not affect the jury's verdict. I disagree. We have stated that such a limiting instruction as the trial court attempted to give here serves an important function in minimizing the prejudice to the defendant from the admission of evidence of prior misconduct. *See State v. Wallace,* 431 A.2d 613, 616 (Me.1981); *State v. Heald,* 393 A.2d 537, 543 (Me.1978); *cf. State v. Goodrich,* 432 A.2d 413, 417, 419 (Me.1981) (when evidence of prior unlawful sexual incidents improperly admitted, absence of immediate and strong admonitory instruction increased danger of unfair prejudice to defendant).

Here, the limiting instruction was given to the jury before any testimony was heard. Thus, even from the outset of the trial, the court unduly emphasized the testimony as it related to the credibility of the victim and the defendant. We recently held that such undue emphasis by the trial court impermissibly diminished the jury's function of evaluating the credibility of the witnesses and thereby denied the defendant a fair trial. *State v. Randall,* 500 A.2d 267 (Me.1985). Moreover, when the limiting instruction itself has caused the prejudice, we cannot assume that the jury did not follow the entire instruction. We have said that "[i]n order for the jury system to function, it must be assumed that, absent unusual circumstances, a jury will follow a court's instructions where the instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them." *State v. Trafton,* 425 A.2d 1320, 1324 (Me.1981).

We must, therefore, assume that the jury did improperly consider evidence of the defendant's prior sexual acts in evaluating the credibility of both the defendant and the victim. After reviewing all the circumstances of this trial, it is apparent, as recognized by the trial court, that credibility of the parties was a vital issue to be determined by the jury. As the trial justice noted in his final charge to the jury, one of the most important functions of a jury is to evaluate the credibility of the witnesses. *See State v. Crocker,* 435 A.2d 58, 77 (Me.1981). This function is critical when, as here, the jury's decision focused "almost exclusively" on the issue of credibility. *Cf. State v. Terrio,* 442 A.2d 537, 542 (Me.1982) (that error in admitting evidence of prior sex-related incidents was not harmless reinforced by court's observation that credibility question was so close). Far from curing the error in the earlier instructions, the justice compounded it in his final charge by repeating that the jurors could consider the evidence of prior sexual acts as it related to the credibility of the parties. Because there exists a reasonable possibility that a proper limiting instruction would have resulted in a different verdict, manifest error must be found. *State v. Bahre,* 456 A.2d 860, 865 (Me.1983). "A verdict based upon a misconception of the law is against the law, and to allow it to stand is not justice." *State v. Michaud,* 473 A.2d at 404, 405. I would accordingly vacate the judgment of conviction.