STATE OF MAINE                          UNIFIED CRIMINAL COURT
KENNEBEC, ss                            LOCATION: AUGUSTA
                                        DOCKET NO. CR-2014-538

STATE OF MAINE                    )
                                 )
v.                               )      ORDER ON MOTION TO SUPPRESS
                                 )
DAVID M. DEVINE                  )

Hearing on the Defendant's motion to suppress was held on May 1, 2015. The Defendant

was present and represented by Matthew D. Morgan, Esq. The State was represented by Deputy

District Attorney Paul Cavanaugh.

The Defendant was indicted by the Kennebec County Grand Jury on June 25, 2014, for

charges that included two counts of Aggravated Assault, Class B, according to 17-A M.R.S.A.

§208(1)(A), based on allegations that he intentionally, knowing or recklessly caused serious

bodily injury to Brooklyn Walker (Count 1) and to Maddilyn Walker (Count 2), and one count of

Violation of Condition of Release, Class E, according to 15 M.R.S.A. §1092(1)(A), based on

allegations that he had been granted pre-conviction bail on the condition that he commit no

criminal act and that he violated that condition (Count 3). All three of these charges are alleged

to have occurred on or about May 11, 2014, in Oakland, Maine.

Through his original motion to suppress dated August 13, 2014, Defendant sought to

suppress any statements made by him to law enforcement officers based on violation of his rights

under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), and because they were not voluntarily

made. Before the hearing began, the Defendant explained that he no longer wished to pursue the

voluntariness argument and instead wished to go forward with just the issue of Miranda

violations. Also before the hearing began, the State agreed that both of the two interviews with

the Defendant occurred without Miranda warnings being read by police and that police did

1

interrogate the Defendant by asking him questions that were intended to provoke incriminating responses. Both the State and the Defendant agreed that the sole issue the court needed to decide was whether the Defendant was in custody for Miranda purposes. The Defendant seeks to suppress statements he made to Captain Rick Stubbert of the Oakland Police Department and Det. Terrance (Terry) James of the Maine State Police on May 12, 2014, as part of interview #1 in the Defendant's home in Oakland. The Defendant also seeks to suppress statements he made to Captain Rick Stubbert and Officer Jeff Coombs of the Oakland Police Department on May 21, 2014, as part of interview #2 in an unmarked police vehicle parked in front of the Defendant's mother's home. At the hearing, both Captain Rick Stubbert and Det. Terrance James testified and both parties agreed that a DVD recording of both interviews could be admitted as evidence in the matter as State's Exhibit #1. This court has reviewed the exhibit and has considered the evidence. For the reasons stated in this order, the court denies the motion.

During both interviews, Capt. Stubbert decided not to read the Defendant any Miranda warnings because he did not feel that the Defendant was in custody and thus they were not required. The first interview occurred just after midnight on May 12, 2014, and was about 18 minutes in length. The second interview occurred around 6:00 p.m. on May 21, 2014, and was about 33 minutes and 15 seconds in length. Capt. Stubbert recorded both interviews via a body camera.

Statements are subject to Miranda requirements only if those statements are the product of a custodial interview. Here, both parties agree that all statements by the Defendant, in both interviews, resulted from questions put to him by the investigators. The central issue presented is whether, during those interviews, the Defendant was in custody. A person is deemed to be in custody for Fifth Amendment purposes, thus triggering Miranda warnings, if that person is under

2

arrest or restrained to a degree associated with formal arrest. *State v. Higgins*, 2002 ME 77, ¶ 12, 796 A.2d 50, 54.

The Defendant was not under formal arrest at any time during either interview and wasn't actually arrested until some days after the second interview.

The alternative question is whether the Defendant was restrained to a degree associated with such an arrest. The question of whether a person is restrained to a degree associated with formal arrest is an objective one, based on reasonable perceptions. *Higgins*, 2002 ME 77, ¶ 13, 796 A.2d at 54. This assessment is based on a consideration of all of the circumstances, including the following factors:

> (1) the locale where the defendant made the statements; (2) the party who initiated the contact; (3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant); (4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave; (5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave; (6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it); (7) whether the suspect was questioned in familiar surroundings; (8) the number of law enforcement officers present; (9) the degree of physical restraint placed upon the suspect; and (10) the duration and character of the interrogation. *Id.*

### Interview #1

Just after midnight on May 12, 2014, Capt. Stubbert and Det. James knocked at the Defendant's door. After about one minute of knocking, the Defendant answered the door. The Defendant appeared to have been sleeping and had just woken up. Both officers were dressed in plain clothes and both testified they were carrying firearms and these might have been visible to the Defendant under their clothing. Capt. Stubbert asked the Defendant if both officers could come in to talk about what had happened earlier in the day on May 11, 2014. The Defendant

responded, "Yeah, come on in. Nice to meet ya. Please sit down." The Defendant then went on to tell police that 4-year-old Wyatt had hit Maddilyn on the head with a plastic bat and jumped on her and "That was about it." The entire interaction between police and the Defendant was calm and not very confrontational and better described as fact gathering by police. After about 2 minutes of talking in the Defendant's living room, the officers and Defendant stepped outside onto the Defendant's porch. On the porch, they further discussed what had occurred and where everything had happened. This lasted for about 3 and ½ minutes until the Defendant and the officers went back into the Defendant's living room. The officers continued to discuss the day's events with the Defendant and he repeatedly explained that he was the only person with Brooklyn, Maddilyn and Wyatt throughout the day with the exception of his parents stopping by for a time. The Defendant explained how he first heard then saw Wyatt hitting the girls with a plastic wiffle ball bat then jumping on them. Capt. Stubbert told the Defendant that the girls' injuries weren't consistent with a wiffle ball bat. The Defendant then suggested that perhaps Wyatt used a dog bone instead. Det. James explained that the girls' injuries were serious and both had been life-flighted to Eastern Maine Medical Center in Bangor for treatment. Det. James told Defendant that it was highly unlikely that Wyatt could have caused injuries so severe. The Defendant then explained that he was in shock because he didn't know what had gone on. The police explained to the Defendant that they needed to understand what had happened and asked if it had been some type of accident. The Defendant denied any accident had occurred and that "Wyatt is a fucking lunatic, alright. He's got problems. He hits people." Capt. Stubbert then said that Wyatt could not have caused the injuries. The Defendant then suggested that maybe the girls fell outside as a possible cause of their injuries. Capt. Stubbert suggested to the Defendant that maybe the girls got on his nerves and the Defendant responded that they didn't

4

and they were acting fine in spite of being two years old. The police wrapped up the discussion telling the Defendant that they didn't know the full extent of the girls' injuries yet and the Defendant responded, "I wish I could help you guys." The Defendant then denied ever raising his hand to either of the girls or any children and that he uses "time outs" as punishment. The police asked to take the plastic bat as evidence and the Defendant agreed and asked the police to keep it. As the police left, the Defendant thanked the officers and wished them a good night.

Here, police did initiate contact with the Defendant at the Defendant's home late at night after waking him up. Both officers were wearing plain clothes. Both officers carried firearms but it is unclear if these would have been visible to the Defendant. The Defendant was told that they were following up on the events from earlier in the day. The Defendant was agreeable to the request and invited both officers into the living room of his home. The Defendant was never told he was under arrest and there was no mention of arrest through the entire conversation. The Defendant at one time suggested that they go out on the porch to show the officers the scene. Later, the Defendant suggested returning inside because it was cold outside. The entire conversation was fairly brief and the tone was non-confrontational and low-key. The officers made it clear several times that they did not believe that 4-year-old Wyatt was capable of inflicting the serious injuries that the girls suffered, but they never directly accused the Defendant of injuring the girls. The Defendant calmly explained what he had seen and heard the previous day and whom he believed had injured the girls. The Defendant never showed any emotion. Even though he displayed some concern for the girls, the Defendant never seemed to be upset. The Defendant never made any admissions and never displayed any concern that he was about to be arrested or charged with anything.

5

Based on these circumstances, the State has established by a preponderance of the evidence that the Defendant was not in custody for Fifth Amendment purposes during the May 12, 2014 interview. *State v. DeLong*, 505 A.2d 803, 808 (Me. 1986). The interview was calm and businesslike and not lengthy. Even though the Defendant was not read his Miranda warnings, he was never told he was under arrest; going to be arrested; or was unable to leave. In fact, the Defendant got up and went outside with police and later invited them back inside again. Both officers remained calm and steady and did not exert governmental authority in fact or by appearance. The officers did inform the Defendant that the girls' injuries were serious in nature. Even though both officers expressed doubts about how the girls' injuries occurred, they never actually accused the Defendant of doing anything wrong or illegal. The Defendant also remained calm through the interview. The Defendant never made any admissions and instead blamed the entire incident on Wyatt. The Defendant explained he had no problem with the officers taking the plastic bat as evidence and actually asked them to keep it and not return it. Because the Defendant was not under arrest during the interview, and because a reasonable person would not have concluded that he or she was restrained to a degree associated with formal arrest, Miranda is not a predicate to the admissibility of the Defendant's statements and the statements are not subject to exclusion on this ground.

### Interview #2

During daylight hours around 6:00 p.m. on May 21, 2014, Capt. Stubbert and Officer Coombs pulled up in an unmarked police vehicle in front of the Defendant's mother's residence. The Defendant came out to greet the officers on a deck and walked down some outside stairs as Capt. Stubbert said "Do you want to jump in the car? We want to chit chat with you." The,

Defendant asked, "Can my Mom come with me?" Capt. Stubbert responded "Ah, I'd rather talk to you alone." The Defendant answered "Yeah, sure." Stubbert continued, "You're not under arrest or anything. So, I just want to talk with ya. You can jump right in the front seat." The Defendant said "Nice truck" and Stubbert explained that it wasn't his but belonged to the police department. The Defendant opened the passenger side door and climbed inside and would have immediately known it was a police vehicle based on a police radio inside. Capt. Stubbert sat in the driver's seat and Officer Coombs sat in the back seat directly behind Capt. Stubbert. The rear seat behind the Defendant was empty. Both officers were dressed in plain clothes and both were carrying firearms and these might have been visible to the Defendant under their clothing. Capt. Stubbert immediately apologized for not getting out to speak with the Defendant earlier and said that the Defendant must have been expecting him. The Defendant answered "Yeah, yeah." Capt. Stubbert then told the Defendant, "So you are not under arrest. I just want to talk with you a little more in depth." Capt. Stubbert then told the Defendant that if he was hot he could roll down the window. Capt. Stubbert told the Defendant that since the last time they met, the police have answered some questions; talked with other people; and gotten more medical reports. He explained further that the police wanted to get the Defendant's side of the story and get a timeline of what occurred on May 11. The Defendant began to explain and Capt. Stubbert interrupted and again told the Defendant "You understand that you're not under arrest, right?" The Defendant answered "Yeah, yeah." Capt. Stubbert said "Free to go at anytime." The Defendant again answers "Yeah, yeah" and began recounting the details of the day in question. This all occurred in the first 1 minute and 15 seconds of the recording. The Defendant continued talking about the day including how Wyatt attacked the girls with a plastic bat (pretty much uninterrupted by police) for the next 6 minutes and 35 seconds. The Defendant's demeanor was

7

calm and composed. He never attempted to get out of the vehicle or asked to get out of the vehicle. He never tried to end the conversation or stopped talking until the 7:50 mark on the recording. Capt. Stubbert then told the Defendant that it would be impossible for a 4 year old "to inflict that kind of damage on anybody, especially two-year-old girls with a wiffle ball bat or even his full body weight." Capt. Stubbert told Defendant that he felt the Defendant did it but he didn't think the Defendant did it on purpose. The Defendant denied that he injured the girls or that he ever would. Capt. Stubbert explained that he only really wanted to know why it happened and that the Defendant was the only one there when the children were injured. The Defendant continued to deny that he had injured the girls and Capt. Stubbert explained several times that he had to have been the one who had done it. The Defendant told police that the girls' mother (Emily) had told him that police were saying he had done it and they were going to come talk with him. (It is important to note that the Defendant never mentioned that he felt police were going to arrest him or charge him – just come and talk with him.) The police continued to go back and forth with the Defendant explaining why they felt he was the one who injured the girls and the Defendant continued to deny he had done anything to the girls. Capt. Stubbert explained that he had collected blood from throughout the house and the Defendant explained that Brooklyn had a bloody nose that day and insisted that he told police about this earlier. Capt. Stubbert explained that he wasn't going to go away and this problem wasn't going to go away until they "set the record straight" to make sure it doesn't happen again. Stubbert explained to the Defendant that he understood that he was scared and the Defendant replied that he was scared that the police were going to "send me away anyways . . . for nothing, ya know." Capt. Stubbert calmly encouraged the Defendant to tell the truth and "set the record straight" for the sake of the girls. The Defendant admitted that he suffers from post-traumatic stress disorder but he isn't

8

violent and instead gets depressed. Capt. Stubbert explained that he didn't think the Defendant hurt the girls on purpose and the Defendant continued to deny that he did anything wrong. Capt. Stubbert explained the list of serious injuries that the girls suffered including a spiral fracture and that Wyatt wasn't capable of having the strength to cause these injuries. The Defendant then denied that this would ever happen again because the State probably would never allow him around the children again. The Defendant explained that this concerned him greatly because Emily was carrying his baby. Capt. Stubbert told Defendant that this was a concern for him too. The Defendant was much more concerned about DHHS and how he might not be allowed to have contact with his family. In stark contrast, he never mentioned that he was concerned about being arrested. This type of back and forth continued for the rest of the interview in the vehicle -the Defendant denying he was lying and Capt. Stubbert insisting that the Defendant wasn't telling the truth. The Defendant never made any admissions. Near the end of the interview, Capt. Stubbert told the Defendant that they (the police) were going away and they needed something to tell the D.A. as they were waiting on this case. Capt. Stubbert told the Defendant that it wasn't going away and that people would keep coming at him until he told the truth. Capt. Stubbert told the Defendant that he would end up telling the truth some day to either the police, a D.A., or a judge. The Defendant then said he wasn't saying anything without a witness there for him. The Defendant explained that he didn't like the fact that police were calling him a liar and Capt. Stubbert agreed that he felt the Defendant was lying. Capt. Stubbert told the Defendant that he didn't have to talk with him. At this point, the Defendant told Capt. Stubbert "OK, then I'm going to go inside because this is getting ridiculous". The Defendant then apologized if he was being rude and that he didn't know what happened. The Defendant

then shook hands with both officers and let himself out the passenger side door and apologized once more. The entire interview lasted about 33 minutes and 19 seconds.

Here, police did initiate contact with the Defendant at the Defendant's mother's home during daylight hours. The Defendant agreed to speak with officers in an unmarked police car without his mother with him. There were two police officers in the vehicle and both were wearing plain clothes. Both officers carried firearms but it is unclear if these would have been visible to the Defendant. The Defendant was told that they are following up on the events from May 11, 2014. The Defendant had previously dealt with Capt. Stubbert during Interview #1 and was never arrested or told he was going to be arrested. During the first 1 minutes and 15 seconds, the Defendant was told three separate times that he wasn't under arrest and was told once that he was free to leave. The Defendant acknowledged knowing this each time and continued to talk freely with police. The Defendant was also told he could put down his window if he wished if it was too hot in the vehicle. The first 8 minutes of Interview #2 were fairly non-confrontational and low-key. After this, the officers made it clear several times that they felt the Defendant was the person who had injured the girls. They also made it clear that they did not believe that 4-year-old Wyatt was capable of inflicting the serious injuries that the girls suffered. In spite of this, the Defendant continued to deny everything. The Defendant calmly explained what he had seen and heard on May 11, 2014 and whom he believed had injured the girls. The Defendant showed little emotion except for getting upset that police wouldn't believe him and that they were calling him a liar. The police explained the full extent of the girls' injuries and how all the evidence pointed at the Defendant. The Defendant explained that he was concerned that the police were accusing him but he seemed more concerned that DHHS was going to prevent him from seeing Emily and the children. The Defendant never expressed any concern

10

that he was going to be arrested or charged and police never mentioned that this was likely to happen any time soon. Police did mention that they were going to speak with the D.A.'s Office and let them know what the investigation showed. The Defendant made the final decision to end the interview and get out of the car. It is clear that he felt he had the ability to leave the vehicle and was not being detained against his will.

Based on these circumstances, the State has established by a preponderance of the evidence that the Defendant was not in custody for Fifth Amendment purposes during the May 21, 2014 interview. *State v. DeLong*, 505 A.2d 803, 808 (Me. 1986). Even though Interview #2 was more confrontational than Interview #1, it remained a calm discussion and was not too lengthy- just over 33 minutes long. Even though the Defendant was not read his Miranda warnings, he was told he wasn't under arrest three times and that he was free to leave once. The Defendant made it clear he understood this and his demeanor during the interview reflected that he had no fear that he was about to be arrested. Both officers remained calm and steady, urging the Defendant to tell the truth, and did not exert governmental authority in fact or by appearance. The officers did inform the Defendant about the strength of the evidence they had, which could be interpreted, that there might be probable cause to arrest him. This court also has considered the fact that Interview #2 took place in an unmarked police car instead of the Defendant's home as in Interview #1. Countering this somewhat is the fact that the Defendant had spoken to Capt. Stubbert once before and was never arrested. The Defendant was aware that police previously walked away without taking him into custody. Police again showed no sign that they were going to arrest him during or after Interview #2 and Defendant wasn't actually arrested until days later.

Because the Defendant was not under arrest during Interview #2, and because a reasonable person would not have concluded that he or she was restrained to a degree associated

11

with formal arrest, Miranda is not a predicate to the admissibility of the Defendant's statements and the statements are not subject to exclusion on this ground.

The entry shall be:

For the foregoing reasons, the Defendant's Motion to Suppress is denied.

Dated: May 14, 2015

Eric J. Walker,
Judge, Maine District Court

12

  vs
DAVID M DEVINE
30 OAK STREET APT 32
OAKLAND ME 04963

DOB: 01/08/1989
Attorney: WALTER MCKEE
       MCKEE BILLINGS LLC PA
       133 STATE STREET
       AUGUSTA ME 04330
       RETAINED 07/17/2014

SUPERIOR COURT
KENNEBEC, ss.
Docket No AUGSC-CR-2014-00538

**DOCKET RECORD**

State's Attorney: MAEGHAN MALONEY

Filing Document: CRIMINAL COMPLAINT
Filing Date: 05/27/2014

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   AGGRAVATED ASSAULT               05/11/2014 OAKLAND
Seq 629   17-A  208(1)(A)      Class B
  STUBBERT       / OAK

2   AGGRAVATED ASSAULT               05/11/2014 OAKLAND
Seq 629   17-A  208(1)(A)      Class B
  STUBBERT       / OAK

3   VIOLATING CONDITION OF RELEASE     05/11/2014 OAKLAND
Seq 9632  15   1092(1)(A)     Class E
  STUBBERT       / OAK

## Docket Events:

05/27/2014 FILING DOCUMENT - CRIMINAL COMPLAINT FILED ON 05/27/2014

05/27/2014 Charge(s): 1,2
      HEARING - INITIAL APPEARANCE SCHEDULED FOR 05/27/2014 at 01:00 p.m.

      NOTICE TO PARTIES/COUNSEL
05/28/2014 Charge(s): 1,2
      HEARING - INITIAL APPEARANCE HELD ON 05/27/2014
      M MICHAELA MURPHY , JUSTICE
      Defendant Present in Court
05/28/2014 Charge(s): 1,2,3
      HEARING - STATUS CONFERENCE SCHEDULED FOR 07/29/2014 at 10:00 a.m.

05/28/2014 BAIL BOND - $50,000.00 CASH BAIL BOND SET BY COURT ON 05/27/2014
      M MICHAELA MURPHY , JUSTICE
      NO CONTACT, DIRECT OR INDIRECT, WITH BROOKLYN WALKER, ELIZABETH WALKER,   JESSICA WILSON,
      MADDILYN WALKER, EMILY WALKER, JENNEFER HEWISTON & WYATT  MCGRAW
05/28/2014 BAIL BOND - CASH BAIL BOND COMMITMENT ISSUED ON 05/27/2014

06/05/2014 Charge(s): 1,2,3
      MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 05/27/2014

06/05/2014 Charge(s): 1,2,3

                MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 05/29/2014
                ROBERT E MULLEN , JUDGE
                COPY TO PARTIES/COUNSEL
06/05/2014 Party(s):  DAVID M DEVINE
                ATTORNEY -  APPOINTED ORDERED ON 05/29/2014


                Attorney:  JEFFREY TOWNE
06/05/2014 Charge(s): 1,2,3
                HEARING -  STATUS CONFERENCE NOTICE SENT ON 06/05/2014


07/07/2014 Charge(s): 1,2,3
                HEARING -  STATUS CONFERENCE NOT HELD ON 07/07/2014


07/07/2014 Charge(s): 1,2,3
                SUPPLEMENTAL FILING -  INDICTMENT FILED ON 06/27/2014


07/07/2014 Charge(s): 1,2,3
                HEARING -  ARRAIGNMENT SCHEDULED FOR 07/29/2014 at 10:00 a.m.


07/07/2014 Charge(s): 1,2,3
                HEARING -  ARRAIGNMENT NOTICE SENT ON 07/07/2014


07/14/2014 MOTION -  MOTION TO CONTINUE FILED BY DEFENDANT ON 07/14/2014


07/16/2014 MOTION -  MOTION TO CONTINUE GRANTED ON 07/15/2014
                M MICHAELA MURPHY , JUSTICE
                COPY TO PARTIES/COUNSEL
07/16/2014 Charge(s): 1,2,3
                HEARING -  ARRAIGNMENT CONTINUED ON 07/15/2014
                M MICHAELA MURPHY , JUSTICE
07/16/2014 Charge(s): 1,2,3
                HEARING -  ARRAIGNMENT SCHEDULED FOR 08/12/2014 at 08:30 a.m.


07/16/2014 Charge(s): 1,2,3
                HEARING -  ARRAIGNMENT NOTICE SENT ON 07/16/2014


07/17/2014 Party(s):  DAVID M DEVINE
                ATTORNEY -  RETAINED ENTERED ON 07/17/2014


                Attorney:  WALTER MCKEE
07/23/2014 Charge(s): 1,2,3
                MOTION -  MOTION FOR WITHDRAWAL OF CNSL FILED BY COUNSEL ON 07/23/2014


                FILED BY JEFFREY TOWNE
08/06/2014 Charge(s): 1,2,3
                MOTION -  MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 07/24/2014
                M MICHAELA MURPHY , JUSTICE
                COPY TO PARTIES/COUNSEL
08/06/2014 Party(s):  DAVID M DEVINE
                ATTORNEY -  WITHDRAWN ORDERED ON 07/24/2014


                Attorney:  JEFFREY TOWNE
08/13/2014 Charge(s): 1,2,3

        HEARING - ARRAIGNMENT HELD ON 08/12/2014
        DANIEL I BILLINGS , JUSTICE
        Defendant Present in Court

        READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
        DEFENDANT.  21 DAYS TO FILE MOTIONS
08/13/2014 Charge(s): 1,2,3
        PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 08/12/2014

08/13/2014 Charge(s): 1,2,3
        TRIAL - DOCKET CALL SCHEDULED FOR 10/07/2014 at 01:00 p.m.

08/16/2014 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 08/14/2014

08/16/2014 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 10/07/2014 at 01:00 p.m.

        NOTICE  TO PARTIES/COUNSEL
08/16/2014 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 08/14/2014

08/16/2014 HEARING - MOTION FOR DISCOVERY SCHEDULED FOR 10/07/2014 at 01:00 p.m.

        NOTICE  TO PARTIES/COUNSEL
08/21/2014 MOTION - MOTION TO PRODUCE DHHS RECORD FILED BY DEFENDANT ON 08/18/2014

09/07/2014 MOTION - MOTION TO PRODUCE DHHS RECORD GRANTED ON 08/26/2014
        DANIEL I BILLINGS , JUSTICE
        COPY TO PARTIES/COUNSEL
09/25/2014 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 09/25/2014

09/26/2014 MOTION - MOTION TO CONTINUE GRANTED ON 09/25/2014
        ROBERT E MULLEN , JUSTICE
        COPY TO PARTIES/COUNSEL
09/26/2014 HEARING - MOTION FOR DISCOVERY CONTINUED ON 09/25/2014

09/26/2014 HEARING - MOTION TO SUPPRESS CONTINUED ON 09/25/2014

09/26/2014 Charge(s): 1,2,3
        TRIAL - DOCKET CALL CONTINUED ON 09/25/2014

09/26/2014 Charge(s): 1,2,3
        TRIAL - DOCKET CALL SCHEDULED FOR 12/02/2014 at 01:00 p.m.

09/26/2014 Charge(s): 1,2,3
        TRIAL - DOCKET CALL NOTICE SENT ON 09/26/2014

10/09/2014 OTHER FILING - DHHS RECORD FILED ON 10/07/2014

        SENT UP TO JUSTICE FOR REVIEW
10/17/2014 ORDER - COURT ORDER FILED ON 10/14/2014
        ROBERT E MULLEN , JUSTICE
        ORDER AFTER REVIEW OF CONFIDENTIAL DHHS RECORDS          THE FULL RECORD
        IS TO BE DISCLOSED
10/23/2014 MOTION - MOTION FOR MENTAL EXAMINATION FILED BY DEFENDANT ON 10/21/2014

11/04/2014 MOTION -  MOTION FOR MENTAL EXAMINATION GRANTED ON 10/27/2014
         ROBERT E MULLEN , JUSTICE
         FAXED    TO STATE FORENSIC SERVICE ON 11/4/14.
11/06/2014 HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 12/02/2014 at 01:00 p.m.

         NOTICE  TO PARTIES/COUNSEL
11/06/2014 HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 12/02/2014 at 01:00 p.m.

         NOTICE  TO PARTIES/COUNSEL
11/11/2014 OTHER FILING -  OTHER DOCUMENT FILED ON 11/07/2014

         EXAMINATION SCHEDULED FOR 11/25/14 OR ASAP
12/02/2014 LETTER -  FROM NON-PARTY FILED ON 12/02/2014

         NOTICE FOR EXAMINATION ON 12/11/14 AT 9:00 AM.
12/04/2014 ORDER -  COURT ORDER FILED ON 12/03/2014
         ROBERT E MULLEN , JUSTICE
         ORDER AFTER REVIEW OF CONFIDENTIAL DHHS RECORDS                COPY SENT TO
         PARTIES
12/04/2014 Charge(s): 1,2,3
         TRIAL -  DOCKET CALL HELD ON 12/02/2014
         DANIEL I BILLINGS , JUSTICE
         Defendant Present in Court
12/04/2014 HEARING -  MOTION FOR DISCOVERY CONTINUED ON 12/02/2014

12/04/2014 HEARING -  MOTION FOR DISCOVERY CONTINUED ON 12/02/2014

12/04/2014 Charge(s): 1,2,3
         TRIAL -  DOCKET CALL SCHEDULED FOR 01/06/2015 at 11:00 a.m.

12/04/2014 HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 01/06/2015 at 11:00 a.m.

         NOTICE  TO PARTIES/COUNSEL
12/04/2014 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 01/06/2015 at 11:00 a.m.

         NOTICE  TO PARTIES/COUNSEL
12/18/2014 PSYCHIATRIC EXAM -  COMPETENCY EVALUATION REPORT FILED ON 12/18/2014

01/08/2015 HEARING -  MOTION TO SUPPRESS CONTINUED ON 01/06/2015

01/08/2015 HEARING -  MOTION FOR DISCOVERY CONTINUED ON 01/06/2015

01/08/2015 Charge(s): 1,2,3
         TRIAL -  DOCKET CALL HELD ON 01/06/2015
         M MICHAELA MURPHY , JUSTICE
         Defendant Present in Court
01/08/2015 Charge(s): 1,2,3
         TRIAL -  DOCKET CALL SCHEDULED FOR 02/02/2015 at 11:00 a.m.

01/08/2015 HEARING -  MOTION FOR DISCOVERY SCHEDULED FOR 02/02/2015 at 11:00 a.m.

         NOTICE  TO PARTIES/COUNSEL

01/08/2015 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 02/02/2015 at 11:00 a.m.

          NOTICE   TO PARTIES/COUNSEL
01/08/2015 PSYCHIATRIC EXAM -  ORDER MENTAL EXAM-INSANITY REPORT FILED ON 01/08/2015

02/09/2015 HEARING -  MOTION TO SUPPRESS CONTINUED ON 02/02/2015

02/09/2015 HEARING -  MOTION FOR DISCOVERY CONTINUED ON 02/02/2015

02/09/2015 Charge(s): 1,2,3
          TRIAL -  DOCKET CALL HELD ON 02/02/2015
          ANDREW M HORTON , JUDGE
          Defendant Present in Court
02/09/2015 Charge(s): 1,2,3
          HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 03/19/2015 at 08:30 a.m.

02/09/2015 Charge(s): 1,2,3
          HEARING -  DISPOSITIONAL CONFERENCE NOTICE SENT ON 02/09/2015

03/22/2015 Charge(s): 1,2,3
          HEARING -  DISPOSITIONAL CONFERENCE HELD ON 03/19/2015
          ROBERT E MULLEN , JUSTICE
          Defendant Present in Court
04/22/2015 HEARING -  MOTION TO SUPPRESS SCHEDULED FOR 05/01/2015 at 08:30 a.m. in Room No.  2

          NOTICE   TO PARTIES/COUNSEL
04/22/2015 HEARING -  MOTION TO SUPPRESS NOTICE SENT ON 04/22/2015

05/13/2015 MOTION -  MOTION TO PREPARE TRANSCRIPT FILED BY DEFENDANT ON 05/07/2015

05/14/2015 HEARING -  MOTION TO SUPPRESS HELD ON 05/01/2015
          ERIC  WALKER , JUDGE
          Attorney: WALTER MCKEE
          Defendant Present in Court
05/14/2015 ORDER -  COURT ORDER FILED ON 05/14/2015
          ERIC  WALKER , JUDGE
          ORDER ON MOTION TO SUPPRESS

A TRUE COPY
ATTEST:  _____
                    Clerk